JAMES RIDDLE, JR. *v*. STATE OF INDIANA.

[No. 370S53. Filed December 7, 1971.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

DeBruler, J.—James Riddle was tried by the Honorable William H. Miller, Judge, and a jury in the Vanderburgh Circuit Court on the charge of theft, by attempting to control property by threat, under I.C. 1971, 35-17-5-74, being Burns

§ 10-3041 (1971 Supp.). He was found guilty and sentenced to not less than one nor more than ten years. His direct appeal from that conviction alleges the following three errors: (1) that evidence seized pursuant to a defective search warrant should have been excluded; (2) that there was a fatal variance between the evidence and the State's reply to the appellant's alibi notice; and, (3) that the court erred in refusing to give a proffered instruction. For reasons set out below, we do not agree with these allegations of error and thus affirm the conviction.

The testimony reveals that the victim, a member of the United States Army, arrived in Evansville, Indiana, by bus at approximately 10:00 p.m. on July 30, 1969. After depositing his coat, a savings bond, and a packet of military records in a bus station locker, he visited several taverns. He testified that he consumed about fourteen beers and lost a couple of hundred dollars playing cards before he left the last tavern at about 2:00 a.m. As he left the Kentucky Tavern, adjoining the bus station, he was approached by a man with a proposition involving a girl. They crossed the street to an entrance of the Vendome Hotel at which point the man struck him and then pulled out a small pistol and robbed him of his money and the key to the bus locker as well as a small zippo lighter. His assailant then fled and the police were summoned.

An unidentified bystander apparently told the police that the assailant lived in the YMCA, and the police started in that direction with the victim, Mr. Hogan. On the way, Mr. Hogan spotted his assailant on the street and pointed him out to the police. That man was the appellant here, and he was placed under arrest at that time. The police had information that the appellant was registered in room 314 at the YMCA and immediately dispatched a guard to watch that room. The next morning at approximately 8:00 a.m. the police secured a search warrant from a magistrate to search the room of the appellant. In the search of the room the officers found incriminating evidence including a gun of the

same type used in the robbery, and the victim's military papers, savings bond, and zippo lighter.

The appellant's first allegation of error is that the evidence seized by the police was obtained under the auspices of an invalid warrant, and should have been excluded from evidence. It has been the law in Indiana since 1922, that if any property is "secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant and its admission over objection was prejudicial error." *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817; *Flum* v. *State* (1923), 193 Ind. 585, 141 N. E. 353; *Wallace* v. *State* (1927), 199 Ind. 317, 157 N. E. 657; *Rohlfing* v. *State* (1951), 230 Ind. 236, 102 N. E. 2d 199; *Todd* v. *State* (1954), 233 Ind. 594, 122 N. E. 2d 343.[1]

This rule followed from Art. 1, § 11 of the Constitution of Indiana which provides as follows:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

It is likewise well-settled law that this right "shall receive a liberal construction in its application to guarantee such right to the people," and that "in obtaining and executing search warrants, there must be strict compliance with whatever formalities are required by law." 193 Ind. at 590. The admissibility of evidence secured under a search warrant can be challenged either before trial in a pretrial motion to suppress, or at trial by timely objection or motion to strike.

---

1. This rule excluding evidence which has been seized illegally has more recently been given federal constitutional dimension in the case of *Mapp* v. *Ohio* (1961), 367 U. S. 643, 81 S. Ct. 1684, so that all fifty states are now bound to exclude evidence illegally obtained.

In the case before us the police performed their duties in a highly professional manner. After arresting the appellant on the street after he had been identified by the victim, they placed a guard at the door of the appellant's room until such time as they could secure a search warrant thus respecting the strong constitutional mandate to secure a warrant in all but the most extreme cases. *Chimel* v. *Calif.* (1969), 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *Trupiano v. U. S.* (1948), 334 U. S. 699, 68 S. Ct. 1229, 92 L. Ed. 2d 1663. The facts constituting probable cause to search the room were presented to the magistrate, who determined that probable cause to search did in fact exist and issued the warrant. The crucial part of the affidavit reads as follows:

> "That affiant makes the above allegations on the basis of the fact that on July 30, 1969, at 2:35 a.m. he was called to the Greyhound Bus Station where affiant interviewed Mr. Everett L. Hogan, whom was robbed and hit in the face and a pistol was pulled on him and approximately three hundred dollars was taken from him by one tall Negro male. Mr. Hogan entered police car and spotted man who robbed him and made identification of man at 4th and Court Streets City of Evansville, State of Indiana, coming from the direction of the YMCA. Affiant arrested subject who stated his name was James Riddle, Jr. and he was from out of town. Arrest was made approximately twenty minutes after robbery. James Riddle, Jr. was searched and the gun and money were not found except a small amount of money. Affiant determined that James Riddle, Jr. had a room rented at the YMCA, room 314. Said YMCA is approximately three blocks from where the robbery took place. Subject had changed shirts between robbery and arrest and had taken off a yellow shirt.
>
> "Affiant believes that the above mentioned property is being concealed in or about the above mentioned room at this time and this affidavit is for the sole purpose of obtaining a search warrant. . . ."

The search was carried out pursuant to that warrant. The invasion of the privacy of the appellant's room was done with judicial sanction so that, on the surface at least, the fundamental constitutional right of the accused "to be secure, in

their persons, houses, papers and effects" unless a warrant has been obtained was not violated. But, regardless of the excellent police procedures used in this case, there remains the question of whether the warrant was legally issued, that is, whether the officers presented sufficient evidence to the magistrate to justify the issuance if the warrant. It is this question which is before us on this appeal.

Although no pre-trial motion to suppress was filed in this case, this question was preserved by the appellant's timely objection to the introduction of the disputed evidence. After a hearing on this issue held outside the presence of the jury, the trial court denied the motion to suppress the evidence and allowed the evidence to be introduced. The appellant is here challenging that decision by the trial court, renewing his argument that the search warrant was not valid.

His argument is based on the admitted fact that the officer who procured the search warrant relied on hearsay testimony without giving the magistrate facts within his knowledge as to the credibility of the informer, who in this case was the victim. The failure, according to the appellant, violates I.C. 1971, 35-1-6-2, being Burns § 9-602(c), which details the requirements for a warrant based on hearsay in the following manner:

> "When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person named or unnamed and it shall contain the following: (a) affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein. (b) the facts within the personal knowledge of the credible person. (c) the facts within the affiant's knowledge as to the credibility of the credible person."

This statute while allowing hearsay evidence to be used in the obtaining of a warrant, carefully limits its use to preserve the role of the magistrate as the independent decision maker in this area. The importance of this independent role of the magistrate in this situation is fundamental

to our system of justice as pointed out in *Wallace* v. *State, supra,* where the Court said:

"The whole case upon which a search warrant issues must be made by him who prays for such writ. The judicial officer before whom an application for a search warrant is filed must exercise his judicial power to determine whether or not a warrant shall issue; such judicial function can be moved only by the facts brought before him, which are under oath or affirmation. A warrant to search and seize, which follows upon a statement based solely upon the belief of the affiant, rests upon the reasoning of the affiant, based upon the secret facts of which he may have knowledge; and the conclusion which results from such reasoning is affiant's, not that of the judicial officer. The judicial process to ascertain probable cause is then transferred from the judicial officer to the affiant. The Constitution permits no such thing." 199 Ind. at 330.

In *Aguilar* v. *Texas* (1964), 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, the U.S. Supreme Court stated what we conceive to be the proper approach in this area, as follows:

"An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrest.' . . . The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only to the discretion of police officer.' . . . Under such a rule 'resort to [warrants] would ultimately be discouraged.' . . . Thus, when a search is based upon a magistrate's, rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' ibid., and will sustain the judicial determination so long as 'there was substantial basis for [the magistrates] to conclude that narcotics were probably present * * *'. . . . As so well stated by Mr. Justice Jackson:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, *supra*, 333 U.S. at 13-14, 68 S. Ct. at 369.

"Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." 378 U.S. at 110-111.

We examine the sufficiency of the facts presented to the magistrate with the intent in mind to encourage the use of warrants, for it is their use, preceded as they are by a prior judicial determination of probable cause, that protects against the likelihood of unconstitutional invasions into the privacy of our citizens. This requirement of a prior determination forces the police officer to marshall the evidence that he possesses and present it in an objective, rational form to a judicial officer at a time before the intrusion takes place. If probable cause to intrude is found to be present, and the warrant is issued, then the intrusion on the citizenry is lessened, even if the warrant is later found to be deficient. By insisting on a judicial officer's prior determination of probable cause, the actual invasion of the citizen's privacy comes as the end result of an orderly decision process founded on legal principles and ad hoc justifications for prior invasions are discouraged. Also by this requirement we minimize the effect of the intrusion by requiring that the place to be invaded and the articles sought be specifically described in the warrant.

Although no system can guarantee that unwarranted intrusions on our citizenry will never occur, the warrant requirement is an attempt to substitute an orderly legal process for the terror-filled, unauthorized invasions which have characterized, and still characterize, some societies. It may well be

that the magistrate erred in his determination that probable cause existed prior to the invasion, but none of us has the right (or privilege) to be free from human error. Having afforded our citizenry the important right to have invasions of their privacy passed upon by a judicial officer, the import of the intrusion is lessened, even if a later determination is made that the magistrate erred.

There is, after all, clearly a difference between a police officer demanding entrance to a house on his own, and the same police officer demanding entrance on the basis of a signed judicial order. This difference is minimal in situations where the judiciary acts as a mere rubber stamp for police officials, but in a system where the judiciary maintains its proper independent function, the warrant is an important tool to legitimize the invasion. The citizen who complains of a warrantless intrusion is far more aggrieved than the one who claims a defective warrant; in the first case the chilling spectre of the police state is raised, while the second merely raises an error of law made in the orderly process due each citizen.

We cannot say here that the magistrate failed to fulfill his independent function. In this case, the hearsay involved was the statements and the identification made by Mr. Hogan, the victim of the robbery, within a few minutes after the crime. The affidavit states that Mr. Hogan (1) called the police, (2) informed the police about the robbery, (3) entered a police car to assist the police in their investigation, and (4) identified his assailant on the street within twenty minutes of the crime. These facts before the magistrate while not independent indicia of reliability, are enough to justify his inference that the hearsay source was credible in this instance.

Certainly, not all alleged victim's are credible sources of information. The malicious or spiteful pointing out of another person as a criminal without basis in fact is not unknown to our society. Where there is doubt as to the credibility of the victim, it is a small price to insist that he sign an affidavit

under oath detailing his information, for later presentation to the magistrate. But where, as here, there is prompt reporting of a crime and complete cooperation in its solution the magistrate clearly had facts from which to infer the requisite credibility of the hearsay source.

The appellant in this case filed a notice of intention to prove alibi and in that notice admitted that he was in the vicinity of the Vendome Hotel at the approximate time of the robbery. The State answered that they intended to prove that the crime occurred at the Greyhound Bus Station which was right across the street from the Vendome Hotel. However, the State's proof indicated that the actual robbery took place on the outside steps of the Vendome Hotel. The appellant urges that this variance is fatal because he was misled in preparing his defense. We do not agree. The first contact between the victim and the appellant was outside the Greyhound Bus Terminal and the victim's testimony was that they walked across the street to the Vendome Hotel where he was struck and robbed. The appellant, by placing himself so near the alleged scene of the robbery essentially had no alibi defense at all, and to now claim that the State's variance in proof was a fatal variance is to no avail. Such a variance, if indeed it is a variance at all, is certainly not fatal in the sense of requiring a new trial.

Finally, the appellant objects to the trial court's refusal to give the following proffered instruction to the jury:

"You are instructed that you should, if possible, reconcile all the evidence in the case. If, however, you find a conflict in the testimony of witnesses that you are unable to reconcile upon any consistent theory, then you must determine for yourselves as to whom you will give credit, keeping in mind that the evidence should be reconciled, if possible, with the presumption of the innocence of the defendant."

It is not error to refuse an instruction which has been covered by another instruction. *Lambert* v. *State* (1969), 252

Ind. 441, 249 N. E. 2d 502. In this case such other instructions were given when the court told the jury that "It is your duty to reconcile all the statements of witnesses on the theory that the defendant is innocent, if you can."

The verdict of the jury is affirmed.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 275 N. E. 2d 788.