Joseph Howard McCLAIN, Appellant,

v.

STATE of Indiana, Appellee.

No. 679S148.

Supreme Court of Indiana.

Oct. 3, 1980.

Thomas L. Ryan, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Joseph Howard McClain, was found guilty in a trial by jury of rape, Ind.Code § 35–13–4–3, and sodomy, Ind. Code § 35–1–89–1. He received a sentence of life imprisonment for the offense of rape. In this appeal the following issues are presented:

(1) The sufficiency of an affidavit for issuance of warrant authorizing a swab emission sample to be taken from the penis of appellant.

(2) Whether appellant was entitled to the presence of counsel at the time the swab emission sample was taken.

(3) Whether testimony of the mother as to what was said to her by her victim daughter was inadmissible hearsay.

(4) Refusal of appellant's tendered instructions defining the crimes of child molesting and rape as defined by statutes enacted after the date of the offenses charged.

(5) Sufficiency of evidence to support the conviction for rape.

Briefly summarized the facts from the record tending to support the verdicts of guilty show that on June 29, 1977, appellant engaged in sexual intercourse and a sodomous act with M. Dickerson, an eleven year old female child. The offenses took place in the house in which she lived with her parents in Fort Wayne, Indiana. At the time appellant was staying at the house as a guest of her father.

I.

Appellant was arrested on July 7, 1977, upon a warrant, and on that same day, a detective of the Fort Wayne Police Department signed an affidavit for a warrant to examine appellant's person for gonorrhea. During the course of an investigative medical examination of the alleged girl victim evidence that she had gonorrhea was discovered. The warrant was issued after appellant refused to submit to the examination. He was taken to the Board of Health where during the course of a procedure the examiner squeezed his penis and obtained a swab of secretion. The presence of gonorrhea was established.

Appellant filed a motion to suppress the test results of this examination which was denied. The positive results were placed in evidence at trial over his objection. Appellant's first challenge to these lab results is that they should have been suppressed on the ground that the warrant authorizing the examination was faulty because it was issued by the magistrate upon an affidavit which did not meet the requirements of Ind.Code § 35–1–6–2 as they existed at the time of issuance.

Before considering the sufficiency of the affidavit, a prior, more fundamental question must be addressed. The premise upon which appellant's claim is based is that the Fourth Amendment and Art. I, § 11, of the Indiana Constitution require the intrusion upon appellant's person to be justified. If the swab emission test of a person under arrest and in custodial detention to gather evidence of a crime is not subject to scrutiny under these constitutional provisions, then the invalidity of the warrant would

not render the introduction of the results of such test inadmissible. Upon consideration of the cases in this area the question is not without some difficulty.

In *Schmerber v. California*, (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court considered whether the Fourth Amendment applied to a blood test which involved the withdrawing of blood from within the body by means of a needle and syringe. Noting that the Fourth Amendment expressly protects the right of the people to be secure in their "persons", that court then went on to reason on a very general level:

"It could not reasonably be argued ... that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of 'persons', and depend antecedently upon seizures of 'persons' within the meaning of that Amendment." 384 U.S. at 767, 86 S.Ct. at 1834.

The court observed several times in that opinion that the blood test involved an intrusion into the human body and beneath the surface of the body. It could bé argued that swab emission tests of a male person involve no intrusion into the body at all and are therefore critically dissimilar. In *United States v. Dionisio*, (1973) 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, it was argued that a grand jury directive to make a voice recording was an infringement of rights under the Fourth Amendment. The court rejected this argument reasoning that the voice like facial characteristics and handwriting is constantly exposed to the public and that no person can have a reasonable expectancy of privacy in one's voice. The court was persuaded that the compelled voice exemplars were "immeasurably further removed from Fourth Amendment protection" than were the intrusion for blood extraction in *Schmerber* or the pat down in *Terry v. Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which intrusions had previously been determined to require constitutional justification. *Terry v. Ohio, supra.*

In *Cupp v. Murphy*, (1973) 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900, the United States Supreme Court considered whether the Fourth Amendment provides protection where scraping the fingernails for evidence of crime was involved. The cutting and cleaning of fingernails involves very minor discomfort. It is a hygienic routine to which most human beings are accustomed, since most have been subjected to it on a regular basis from early childhood. It would not ordinarily create in one a feeling of fear, anxiety or humiliation. It does not ordinarily create any risk of injury or infection. No special skills would be required of one to safely conduct such an examination. In spite of the minor nature of the procedure, the court held that it, like the blood test and pat down by officers, went beyond the region defined by voice exemplars, handwriting and fingerprinting, and is subject to constitutional scrutiny.

In a case quite similar to the one at bar, a federal circuit court of appeals has considered whether a penis scraping invoked the protection of the amendment. There the police sought to obtain menstrual blood of the victim's type. The premise of the case is clear that that procedure invoked the protection of the amendment. *Brent v. White*, (5th Cir. 1968) 398 F.2d 503.

In light of these cases it is reasonable to conclude that intrusions involving examination of the person are not outside the protection of the Fourth Amendment because they involve no probing into the body or beneath the body surface. No subsurface probing was involved in the intrusions considered in *Cupp* or *Terry*. It is likewise reasonable to conclude that the touching of the person by law enforcement officials is not excluded from the requirement of justification because it did not involve a great amount of force or create a risk of physical injury. However, it appears clear that some touching, as generally occurs when one is fingerprinted, and the creation of some fear or anxiety, as when one is called before an official government body and required to submit to voice recordings, does not call up constitutional con-

cern. As described in the record in this case, the swab emission test does not involve the insertion of an instrument into body, but the body fluid is forced from it by the application of pressure. However, such pressure would not be less than that applied during a scraping of one's fingernail or during a simple scraping of the skin for dried blood. The risk of injury or the possibility of discomfort attendant to the swab emission test is commensurate with that involved in fingernail scrapings. Further the probability that the swab emission test procedure would create fear, anxiety, or humiliation in the mind of the person examined would be somewhat greater than exists where simply cleaning the fingernails is involved. If a person has a privacy interest of a constitutionally protected nature intruded upon by a fingernail scraping, it would be difficult to say that an equal privacy interest did not exist in body fluids which could show sexual activity. Given the fundamental human interests at stake, the conclusion we reach is that the intrusion involved in the swab emission examination is sufficient in magnitude to require constitutional justification. In this case the State relies upon a search warrant for this purpose, and we now turn to consider its validity.

█ The affidavit for the search warrant issued in this case omitting the name of the mother and alleged victim read:

"Undersigned affiant swears upon oath that she believes and has good cause to believe that Joseph H. McClain presently incarcerated in the Allen County Confinement Center located in Fort Wayne, Allen County, Indiana, had on June 30, 1977 and still has concealed in or about his person, Gonorrhea, a contagious venereal disease.

That affiant bases her belief and cause for belief on the fact that on June 30, 1977 . . . reported to the Fort Wayne Police Department that her daughter . . . age 11, had been raped and forced to commit fellatio. Fort Wayne detectives conducted an investigation and the said investigation revealed that when . . . was

examined at Lutheran Hospital, traces of Gonorrhea were found. The said investigation also led to the arrest of Joseph H. McClain on a preliminary charge of Rape. As a result of the aforesaid information relating to Gonorrhea, Detective Pyne contacted the Sheriff's Department and requested that Joseph H. McClain be examined for suspected Gonorrhea. The affiant was later informed that Joseph H. McClain had refused to submit to the requested examination. The aforesaid medical examination was requested as evidence of a criminal investigation and also to prevent the spread of a contagious disease.

Detective Pyne further states she believes the aforesaid . . . is a credible and reliable person who spoke with personal knowledge of the facts relating to the Rape and Sodomy committed upon her and also in the identification of Joseph H. McClain as the person committing the aforesaid offenses."

The statute governing affidavits of this nature provides in part:

"(a) [N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for . . . and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed . . . and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished." Ind.Code § 35–21–6–2.

Under the Fourth Amendment a determination of probable cause is required to be made by a judge before a search warrant may be issued. Such a determination may be made upon affidavit or sworn oral state-

ment. To be sufficient the affidavit or testimony must provide a substantial basis for the judge to find that probable cause exists to believe that the proposed search will result in the discovery of evidence of an offense. *Aguilar v. Texas*, (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In making this finding inferences may be drawn by the judge from the facts stated. *Giordenello v. United States*, (1958) 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. If the basis, be it affidavit or actual testimony, does not provide a sufficient basis for the finding of probable cause, the evidence obtained through the warrant is inadmissible at appellant's trial. *Aguilar, supra. Riddle v. State*, (1971) 257 Ind. 501, 275 N.E.2d 788; *Callender v. State*, (1922) 193 Ind. 91, 138 N.E. 817.

██ An affidavit for search warrant may be sufficient although it is based upon hearsay, i.e., the maker may include information provided by others of which he has no first-hand knowledge so long as the issuing authority is provided the following information:

"(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge as to the credibility of the credible person." *Madden v. State*, (1975) 263 Ind. 223, 226, 328 N.E.2d 727.

██ Appellant challenged the sufficiency of the affidavit because appellant reads the affidavit above as though the facts alleged therein were provided by G. Alexander, the mother of M. Dickerson, the alleged victim, and challenges the sufficiency of the affidavit because it does not include facts known to the maker showing Alexander is a credible person, and that the maker states that her belief is predicated upon Alexander's police report. Appellant focuses upon the sentence:

"That affiant bases her belief and cause for belief on the fact that on June 30, 1977 ... Alexander reported to the Fort Wayne Police Department that her daughter M. Dickerson, age 11, had been raped and forced to commit fellatio."

One must accept the correctness of appellant's point here that to the extent the belief has been shown engendered by the hearsay statements of G. Alexander, it stands unsupported since Alexander's credibility is not shown. However, this statement of the maker is followed by further facts and information which the judge could clearly have inferred came from sources other than G. Alexander and participated in inducing belief in the maker of the affidavit. Such facts include the criminal investigation conducted by the police which involved a medical examination of the reputed victim, M. Dickerson, with a laboratory determination that she had been infected with gonorrhea. They also included the fact that the criminal investigation had culminated in the arrest of appellant on a preliminary charge of rape, and that M. Dickerson had identified appellant as her attacker. The presence of these facts which did not depend upon the credibility of Alexander for their weight are sufficient to establish probable cause for the belief asserted. The affidavit was not therefore insufficient for failure to provide facts to show the credibility of Alexander. The warrant therefore was properly issued and the results of the laboratory test upon the fluid taken from appellant were properly admitted.

## II.

██ Appellant next argues that he had a right to the presence of counsel at the time the search warrant was served and the internal body secretions were seized. In support of this position appellant analogizes this case to those involving police lineups and interrogations. Appellant was certainly guaranteed the right to the presence of counsel by the Sixth Amendment and Art. I, § 13, of the Indiana Constitution at all critical stages of the criminal proceedings against him. Had appellant been subjected to interrogation after his arrest, he would clearly have had the right to the presence

and advice of counsel. *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Beck v. State*, (1968) 250 Ind. 276, 235 N.E.2d 699. The right to counsel at such point is available as a safeguard for the privilege against self–incrimination. Clearly the swab emission test does not involve attempts to get testimony or assertions from the person examined, and there is not need for counsel to be present to protect that privilege. *Schmerber v. California, supra.* Had appellant been subjected to a lineup he would have been entitled to the presence of counsel. *United States v. Wade*, (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California*, (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The right to counsel at such point exists in order to safeguard the right at trial to confront the identification witnesses. Persons subjected to swab emission tests should not experience special difficulty in probing, testing and otherwise challenging through cross–examination or contrary evidence, the results of such tests. Such tests are not critical stages of the proceedings and there is no right to the presence and advice of counsel during them.

### III.

■ Mrs. Alexander, the mother of the victim, during direct examination by the trial prosecutor, related that her daughter had reported the sexual encounter with appellant to her. This testimony was permitted over a defense objection of hearsay. Here, the out–of–court declarant, namely the victim, was in court, did testify and describe the incident forming the basis for the charge in detail, and was subjected to full cross–examination. Under these circumstances the testimony of Mrs. Alexander was not hearsay.

■ Hearsay evidence is testimony by a witness in court relative to an extra–judicial declaration by another which is offered to prove the truth of the facts asserted by the declarant. The value of the witness' statement rests on the credibility of the declarant, and the declarant is not in court or otherwise available for meaningful cross–examination. *Harvey v. State*, (1971) 256 Ind. 473, 269 N.E.2d 759; *Jethroe v. State*, (1974) 262 Ind. 505, 319 N.E.2d 133; *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482; *Raymer v. State*, (1978) Ind. App., 381 N.E.2d 109; *Buttram v. State*, (1979) Ind., 382 N.E.2d 166.

### IV.

Appellant sought and was refused instructions including sections of the new law in relation to child molesting and in relation to the crime of rape. These new statutes came into effect after June 29, 1977, the date of the charged offenses. Apparently these instructions were perceived by the defense as a benefit in that they might, if given, in some manner result in appellant's conviction for a lesser included offense or the giving of a lesser sentence. Clearly these statutes were not in force at the time of the alleged offenses, and did not apply to the case in the sense that they did not describe conduct deemed criminal at the time of the offenses or reflect the penalties deemed appropriate for the offenses of sodomy and rape at the time of the offenses. Appellant's contention on appeal relies upon Art. I, § 19, of the Indiana Constitution which states:

> "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

He argues that the trial court's refusal to give these instructions unduly restricted the right of the jury to determine the law for themselves.

■ There is no law or reason which support the conclusion that the refusal of instructions defining new criminal statutes constitutes a restriction upon the right of the jury reserved to it by Art. I, § 19. Criminal statutes are written directives to the judicial branch of government and to juries by the popularly elected representatives of the citizenry acting as a body. They are to be enforced according to their plain meaning so long as they are consistent with the constitutions. Neither courts nor juries are empowered to rewrite such statutes, and it has long been deemed the prov-

ince of the court rather than the jury to select or focus upon the statutes which are intended to govern in a particular case. In order to sustain appellant in this argument, this Court would have to declare that this selection process is contrary to the dictates of Art. I, § 19. To do so would itself be contrary to the reposition of judicial power in the courts by Art. VII, § 1. It is the duty of courts to charge the jury in a criminal case as to "all matters of law which are necessary for their information in giving their verdict." Ind.Code § 35–1–35–1. It is the duty of juries to "determine the law" after receiving it from the court in a form which does not bind their consciences or prevent them from evaluating the legal and statutory formulations for themselves and applying their evaluations to the particular case. *Burris v. State*, (1941) 218 Ind. 601, 34 N.E.2d 928. The selection by the court of the governing statutes in a criminal case does not impinge upon the right of juries to "determine the law." The refusal of the instructions cited was not error.

 One of the essential elements of the crime of rape is penetration. *Allbritten v. State*, (1974) 262 Ind. 452, 317 N.E.2d 854. In support of this element the alleged victim, M. Dickerson, testified at trial as follows:

"Q. Did he actually penetrate or did he put it into your vagina at all?

A. Yeah, he put it in.

Q. What happened then?

A. Then he left it out, he took it out.

Q. I'm sorry?

A. Left it off and then took it out and then he heard my Mom come and he told me to go back to bed."

On cross–examination defense counsel introduced her previous testimony by deposition. There she had stated that, "He stuck his thing in mine and I said ouch and he took it out." She stated further that she was uncertain because it hurt when he tried to put it in. Appellant contends that the evidence of penetration was not sufficient. Having examined the evidence above recited tending to support the verdict without ascribing to it any particular weight or credibility, we find that it was of sufficient probative value to permit a reasonable trier of fact to infer beyond a reasonable doubt that penetration of the vagina occurred. Minor discrepancies such as are identified here between the in–court and deposition statements of a witness are for the consideration of the trier of fact alone.

The conviction is affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

GIVAN, C.J., concurs in result.