Russell Ray **POWERS**, Appellant,

v.

**STATE of Indiana,** Appellee.

No. 481S108.

Supreme Court of Indiana.

Oct. 21, 1982.

J. Richard Kiefer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant-defendant, Russell Ray Powers, was convicted of dealing in a narcotic drug, Ind.Code § 35–48–4–1 (Burns Repl. 1979), dealing in a schedule II controlled substance, Ind.Code § 35–48–4–2 (Burns Repl.1979), and dealing in a schedule IV controlled substance, Ind.Code § 35–48–4–3 (Burns Repl.1979), at the conclusion of a jury trial in Clark Circuit Court on April 29, 1980. Appellant was given thirty (30) years imprisonment for Count I, ten (10) years imprisonment for Count II, and five (5) years imprisonment for Count III, all sentences to be served consecutively. Powers now appeals.

Appellant raises seven errors on appeal, concerning: 1) whether the search warrant was based upon illegally intercepted telephone conversations; 2) whether the trial court erred in allowing the State to retain the confidentiality of its informant; 3) whether the trial court erred in overruling Appellant's Belated Motion to Correct Errors based on newly discovered evidence; 4) whether the search warrant was facially inadequate; 5) whether the trial court erred in admitting exhibits over Appellant's chain of custody objection; 6) whether the trial court erred in allowing a police officer to testify as to Appellant's intent to deliver drugs; and 7) whether the sentence imposed was excessive.

On March 14, 1979, a search warrant was issued authorizing the police to search for narcotics in the residence located at 801 E. Chestnut Street in Jeffersonville, Indiana. Officers Donald Croft and Ray Leezer were on surveillance at 801 E. Chestnut on March 15, 1979, when Appellant arrived at the house. Appellant was accompanied by two individuals, a man and a woman. After the three got out of the car, Appellant removed two dark colored satchels and entered the house. A few minutes later, Appellant left the house, made some purchases at a liquor store and a grocery store, and then returned to his home at 801 E. Chestnut. At that point the police informed him of the search warrant and Appellant agreed to let the police search his residence. As they approached the front door, one of the officers observed a young man grab a briefcase or bag and run through the house. The police forced the door open and caught the young man, Terry Powers, and seated him, along with Appellant, a woman named Rhonda Spears, and a young child, on a bed while the house was searched. The search turned up cocaine, diazepam, barbiturates, phentermine, and some marijuana. In addition, mannitol, which is used to cut cocaine, was also found, along with various sifters and other tools.

I

Appellant argues that the search warrant was based on information illegally obtained through the interception of his telephone calls. He now argues that this fact makes the search and seizure of items at his home illegal and therefore the trial court should have suppressed the introduction of all evidence seized at Appellant's residence. Appellant's error 3 is related to error 1 and both errors will be handled in this issue.

Officer Donald Croft was the affiant for the search warrant and the following reasons constituted his belief that there was probable cause to search Appellant's house:

"I am a police officer with the Jeffersonville Police Department. Approximately three months ago a person contacted me for the purposes of giving me information concerning the possession and sale of cocaine. This person or informant related to me that the person of RUSSELL POWERS who lives in the above described dwelling was a regular dealer in cocaine. *This informant further related to me that RUSSELL POWERS was observed by the informant cutting cocaine in the above described dwelling on a number of occasions and further advised me that RUSSELL POWERS was observed by the informant selling cocaine to persons who visited at the above described dwelling. This informant additionally related that RUSSELL POWERS would cut this cocaine and bag it in plastic bags using a seal-a-meal machine which seals material in plastic bags.* I advised this person, my informant, to keep me notified as to the activity of RUSSELL POWERS. Over the last three months on at least eight occasions this informant gave me information concerning the activity of RUSSELL POWERS. This information consisted of this informant telling me that RUSSELL POWERS intended to go to a certain place and meet with a certain person for the purposes of transacting a deal in cocaine. On these occasions I and other police officers provided surveillance of RUSSELL POWERS and he did go to the places indicated by this particular informant and on several of these occasions I did observe him meeting with the person described by the informant. I was not able on these occasions to make any interceptions or determine that drug trafficking was occurring.

This informant advised me on a number of occasions that RUSSELL POWERS would go to Bowling Green, Kentucky, for the purpose of purchasing cocaine. *This informant additionally advised me that on the occasions that RUSSELL POWERS was observed cutting the cocaine that he referred to it as cocaine.*

Last evening, March 13, 1979, I was observing the above described dwelling and noted that there were six automobiles parked outside the dwelling and that these automobiles had Kentucky plates. I also observed a number of people inside the dwelling. Early this morning, March 14, 1979, I contacted my informant and inquired as to the people being at 801 E. Chestnut Street and as to the automobiles parked outside. This informant advised me that RUSSELL POWERS was present in the dwelling with a number of people who were pooling their money for the purpose of having RUSSELL POWERS purchase a large amount of cocaine. This informant related that there were conversations concerning the purchase of cocaine and this information related that money was given to RUSSELL POWERS for the purpose of his purchasing cocaine.

Following this conversation with my informant I received a telephone call from the informant later on and the informant related that RUSSELL POWERS made a statement that he was going to Bowling Green to make the connection and that he had left for the apparent purposes of traveling to Bowling Green. *This informant further related that last night cocaine was observed by the informant in the above described dwelling and that none of the persons left the dwelling last night with this cocaine.* Furthermore, this informant stated that based upon past observations cocaine was always to be found in the above dwelling.

I discussed this matter further with this informant who related that following his trips to Bowling Green that RUSSELL POWERS would return to the above described dwelling taking the cocaine inside for the purposes of cutting it before delivering it or selling it to his various customers.

I asked this informant how the informant was certain that the materials

RUSSELL POWERS dealt in was cocaine. *This informant related that in addition to the numerous conversations in which the word cocaine was used and in addition to seeing the white powdery substance in plastic bags that RUSSELL POWERS snorted the white powder in the informant's presence and that the white powder had some obvious effect upon him.*

I believe this informant to be a credible person who spoke with personal knowledge as to the informant's observations in that on at least eight occasions, as mentioned above, the information given to me by this informant proved to be accurate and correct.

Based upon the foregoing, I believe there is probable cause to search said dwelling for cocaine." (emphasis added)

A hearing on the suppression motion was held on August 27, 1979. Croft was questioned mainly by the defense counsel, although a few questions were asked by the State. Under questioning, Croft testified that all of the facts in the affidavit were true to his knowledge. He stated that he did not know of any illegal interception of phone calls and that he never directed the informant to make any illegal interceptions. Defense counsel asked Croft who the informant was but the State successfully objected, arguing that the confidentiality of the informant must be maintained. A few notes that Croft wrote down were introduced at which time he was asked to explain the term "calls often." Croft replied that the information he wrote down on that note pad came from another informant but he assumed that "calls often" meant telephone calls. At the end of the hearing defense counsel made an offer to prove that Connie Hartman was the informant. The trial court reserved judgment on the motion until both sides had an opportunity to submit briefs in support of their positions. The Motion to Suppress was denied on December 7, 1980.

Appellant cites us to 18 U.S.C. § 2515 (1970) which provides as follows:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

Appellant argues that Connie Hartman listened in on his private telephone calls while she worked for a telephone answering service to which Appellant subscribed. This information was passed on to Officer Croft and was used by him to determine the probable cause for searching Appellant's house. Therefore, Appellant states that § 2515 compels any court to refuse the introduction into evidence of all items seized during the search.

We feel that Appellant failed to prove this contention at the hearing on the motion to suppress. The underlined portions of the search warrant affidavit indicates that the informant personally observed the illegal transactions at Appellant's residence and did not receive that information through illegal interception of telephone calls. It may be possible that the information concerning the eight occasions when the informant knew where Appellant was going and who he was meeting was obtained by listening in on telephone calls but this speculation was apparently insufficient to convince the trial court of any illegality. Officer Croft stated that he did not know of any illegal interceptions nor did he authorize any interceptions. While Appellant made an offer to prove that Connie Hartman was the informant, he never introduced her at the hearing. Appellant apparently made no effort to subpoena Hartman or depose her prior to the hearing or the trial. In fact, during the hearing on the Belated Motion to Correct Errors, Hartman stated that she was never approached prior to or during the trial by Appellant or anyone else. The burden of showing that

the information in the search warrant affidavit was the product or fruit of illegal police activity lay with Appellant. *See Maciejack v. State*, (1980) Ind., 404 N.E.2d 7. From the evidence presented at the hearing, the trial court properly overruled the motion to suppress all evidence seized at Appellant's house.

After the trial was concluded and Appellant was convicted and sentenced to prison, a hearing on Appellant's Belated Motion to Correct Errors was held on August 21, 1980. Connie Hartman, the alleged informant, was the only witness to testify at the hearing. Basically, Hartman told the trial court that she was the secret informant, that she did illegally intercept Appellant's telephone conversations, and that Officer Croft told her he would make up statements in the affidavit of the search warrant in order to protect her identity. Her testimony was not without some discrepancies but Appellant urges us to consider this "newly discovered" evidence and to hold that the trial court erred in refusing to grant a new trial. We disagree.

■ We held in *Bryant v. State*, (1979) Ind., 385 N.E.2d 415, 421:

"To justify the granting of a new trial on the basis of newly discovered evidence, the petitioner or appellant must show: '... (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result.' *Tungate v. State*, (1958) 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36. *See e.g. Clark v. State*, Ind., 378 N.E.2d 850; *Jackson v. State*, (1975) 264 Ind. 54, 339 N.E.2d 557; and *Emerson v. State*, (1972) 259 Ind. 399, 287 N.E.2d 867."

Granting a new trial on ground of newly discovered evidence is within the discretion of the trial court and this Court will not disturb the ruling unless there is an abuse of discretion. *Smith v. State*, (1982) Ind., 429 N.E.2d 956; *Washington v. State*, (1979) Ind., 390 N.E.2d 983.

■ Without examining all of the nine *Tungate* requisites, it is obvious that Appellant has failed the sixth requirement, that of showing the use of due diligence to discover the evidence in time for trial. Ind.R. Tr.P. 59(A)(6) permits a new trial for "[n]ewly discovered material evidence which could not, with reasonable diligence have been discovered and produced at the trial." Therefore, under *Tungate* and Rule 59(A)(6) a new trial may be denied where the appellant cannot show that even with reasonable diligence the new evidence could not be produced at trial. The record reveals that Appellant was arrested on March 15, 1979. At the suppression hearing on August 27, Appellant made an offer to prove that Connie Hartman was the confidential informant. On April 22, 1980, Appellant's trial began and was concluded on April 29 when the jury returned verdicts of guilty. Connie Hartman testified at the hearing on Belated Motion to Correct Errors that prior to Appellant's trial and during the trial neither Appellant nor defense counsel approached her in any manner to question her about her role as the informant. Thus, nearly eight months passed from the suppression hearing to the start of the trial without any effort by Appellant to secure testimony from Connie Hartman, even though Appellant alleged that she was the secret informant and that she had been involved in illegal activity. There was no abuse of discretion in denying a new trial.

■ Assuming, *arguendo*, that Connie Hartman was telling the truth at the postconviction hearing, that she did indeed intercept Appellant's telephone calls, we fail to see how this would result in a new trial. The timing of her testimony is crucial here. If Hartman had testified at the suppression hearing and at that point convinced the trial court of her allegations, the search warrant would have been invalid due to the illegal information contained therein. The removal of the illegally obtained informa-

tion would have eliminated the probable cause in the search warrant and the evidence seized would have been suppressed. The truth and veracity of her testimony at the *post-conviction* hearing, however, would not travel back and render the search warrant invalid:

> "As this Court stated in *Smith v. State*, (1971) 256 Ind. 603, 271 N.E.2d 133, 136:
>
> > 'The test for probable cause to make an arrest is whether *at the time of the arrest* the facts and circumstances . . . were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense. *Beck v. Ohio,* (1964) 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.'
> >
> > Emphasis added. *See Gaddis v. State,* (1977) 267 Ind. 100, 368 N.E.2d 244. Thus, whether probable cause existed for the arrest is determined by examining the facts and circumstances as they were known to be at the time of the arrest."

*Riggenbach v. State,* (1979) Ind., 397 N.E.2d 953, 954–55.

■ Although the above cited case dealt with probable cause for arrest, we feel the rationale is similar for probable cause in issuing a search warrant. The facts known to Officer Croft at the time the search warrant was issued indicated that illegal activity was taking place in Appellant's house. That some of the underlying circumstances may be shown later after trial to be illegally obtained does not change the fact that probable cause existed for the search and subsequent arrest. No error has been shown.

## II

Appellant claims that the trial court erred in refusing to disclose the identity of Officer Croft's informant. He feels that her identity was crucial to the attack on the search warrant for the suppression of evidence as noted above in Issue I. Appellant argues that had the informant's identity been disclosed, the trial court would have been bound by federal statutes to suppress the evidence resulting from the search warrant.

■ The general policy in Indiana is to prevent disclosure of an informant's identity unless the defense can demonstrate that disclosure is relevant and helpful or is necessary to a fair trial. *Ryan v. State,* Ind., 431 N.E.2d 115; *Lewandowski v. State,* (1979) Ind., 389 N.E.2d 706. Since the State has the privilege to withhold the identity of an informer, the burden is upon the defendant seeking disclosure to demonstrate exception to the privilege that the informer remain anonymous. *Lewandowski, supra.*

■ The informant was never called as a witness at trial. The only involvement of the informant was the information given to the police which formed part of the basis for the search warrant. Appellant's argument presupposes that Connie Hartman would have testified that her information was obtained through illegal eavesdropping. As was indicated above, relevant portions of the affidavit concerning the cocaine indicated that the information was obtained through personal observation. In addition, Connie Hartman's testimony under oath at the hearing was full of inconsistencies. For example, at one point Hartman stated she saw cocaine in Appellant's residence on only one occasion but later she stated she saw cocaine on more than one occasion. Another time Hartman stated she gave Croft information that Appellant was going to meet someone on only one instance. She was later asked how many times she reported to Croft that Appellant was going to meet someone at a certain place and her answer was that it probably would have been more than three or four times. Still later, Hartman said she never reported him leaving to meet someone at a certain location but said only that he was going out of town to a certain place. It does not necessarily appear that Hartman's testimony would have been relevant and helpful in preparing Appellant's defense nor essential to a fair determination of the case. Appellant has failed to meet his burden of demonstrating the need for disclosure.

Furthermore, the defense strongly suspected Hartman was the informant. Had the Appellant wished to pursue this theory, he could have issued a subpoena for Hartman as a defense witness at the suppression hearing or the trial. At the very least, he could have deposed her and any arguable infirmities in the affidavit could have been presented to the trial court. There is no error here.

### III

Appellant claims that the search warrant was facially inadequate to meet statutory and case law requirements. Specifically, Appellant states that the affidavit failed to state sufficient facts upon which a judicial officer could determine that the confidential informant was reliable.

The statutory requirements for such affidavits are set forth in Ind.Code § 35-1-6-2(a) (Burns Repl.1979) which provides as follows:

"Affidavit—Contents and form—Sworn testimony in lieu of or in addition to affidavit.—(a) Except as provided in subsection (c) of this section, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished."

In *McClain v. State,* (1980) Ind., 410 N.E.2d 1297, 1301–02, we discussed the factors that must be met before a search warrant may be issued by a magistrate:

"Under the Fourth Amendment a determination of probable cause is required to be made by a judge before a search warrant may be issued. Such a determination may be made upon affidavit or sworn oral statement. To be sufficient the affidavit or testimony must provide a substantial basis for the judge to find that probable cause exists to believe that the proposed search will result in a discovery of evidence of an offense. *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In making this finding inferences may be drawn by the judge from the facts stated. *Giordenello v. United States,* (1958) 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. If the basis, be it affidavit or actual testimony, does not provide a sufficient basis for the finding of probable cause, the evidence obtained through the warrant is inadmissible at appellant's trial. *Aguilar, supra. Riddle v. State,* (1971) 257 Ind. 501, 275 N.E.2d 788; *Callender v. State,* (1922) 193 Ind. 91, 138 N.E. 817.

An affidavit for search warrant may be sufficient although it is based upon hearsay, i.e., the maker may include information provided by others of which he has no first-hand knowledge so long as the issuing authority is provided the following information:

'(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge as to the credibility of the credible person.' *Madden v. State,* (1975) 263 Ind. 223, 226, 328 N.E.2d 727."

The affidavit is found in Issue I. There, Officer Croft related that the informant spoke with personal knowledge from having viewed cocaine in the residence the previous night and from having observed Appellant selling cocaine there on other occasions. The informant also saw Appellant

cutting cocaine and sealing it in plastic bags. At these times, Appellant referred to the white substance as cocaine and snorted it in the informant's presence. This personal and first-hand knowledge satisfies the first two requirements of *Madden, supra.*

The remaining need is to determine whether the third requirement of *Madden* is met. Croft stated that on eight prior occasions the informant told him that Appellant would go to certain places and meet with certain people. The police put a surveillance on Appellant and found that he did go to the places indicated and did meet with the people described by the informant. The affiant was unable to determine if illegal activity was taking place at these meetings but nevertheless, the information was accurate and correct. Croft stated at the end of the affidavit: "I believe this informant to be a credible person who spoke with personal knowledge as to the informant's observations in that on at least eight occasions, as mentioned above, the information given to me by this informant proved to be accurate and correct."

■■■ It is well established that a statement in an affidavit declaring that the informant has previously supplied valid information is sufficient to satisfy the statutory requirement of facts as to the credibility of the informant. *Tinnin v. State,* (1981) Ind., 416 N.E.2d 116; *Foxall v. State,* (1973) 157 Ind.App. 19, 298 N.E.2d 470. Appellant argues that this information establishing the credibility of the informant is analogous to the "tip" in *Bowles v. State,* (1971) 256 Ind. 27, 267 N.E.2d 56, where we held that the tip alone was insufficient to establish the necessary credibility. We held as such because the tip in *Bowles* was not supported by either history of reliability of source or extrinsic facts either from the informer or other proper sources. In this cause there were at least eight occasions where the informant provided the police with accurate information. Thus, the statement that the informant had previously provided valid information was sufficient. There has been no error shown here.

## IV

When the cocaine and other drugs were removed from Appellant's home, they were taken to the Jeffersonville Police Department's property room and Officers Roberts and Croft bagged and marked the items that night. When the officers were finished the next morning, the items were placed in a safe to which only the Chief of Police and his assistant had the combination. Four days later, March 20, 1979, the Chief of Police opened the safe with Roberts and Croft present, and all the evidence was intact. Croft and Roberts took the items to the Indiana State Police Laboratory where the items were handed over to chemist George Smith. After running five different tests, Smith found cocaine in each of the samples. He sealed the items in a plastic bag and handed it over to the police on March 28. Since it was late in the evening and the Chief of Police was not around, the evidence bag was placed in a lock-up cabinet and the next morning was transferred to the safe. At that time the evidence bag was still sealed at the top. On the Friday prior to the trial, Exhibit 11 was missing seventeen bags of cocaine and Exhibit 17, which originally contained one large bag and six small packets, was missing four of the small packets. Appellant objected to the admission of all exhibits, claiming there was an insufficient chain of custody shown.

■■■ Appellant specifically argues that the missing evidence indicates that other people had the combination to the safe and therefore all of the exhibits could have been tampered with before they were moved to the laboratory for examination. We disagree. Appellant objected on chain of custody grounds but we held in *Graham v. State,* (1970) 253 Ind. 525, 255 N.E.2d 652, that the State can introduce the laboratory's findings upon producing records or testimony showing the "continuous whereabouts of the exhibit at least between the time it came into their possession until it was laboratory tested to determine its composition." *Id.* at 531, 255 N.E.2d at 655. A proper chain of custody was shown at the

trial. As for Appellant's other contention, nothing in the record indicates that the exhibits were tampered with prior to testing and this Court will not speculate about such events upon review. There is no error here.

### V

During the trial Officer Croft testified about the amount of narcotics that were found in the Appellant's house. Over objection by defense counsel, Croft stated that in his opinion the drugs were possessed for delivery and not for personal use. Appellant argues that the witness' opinion of intent is inadmissible because whether or not Appellant intended to deal in narcotics was a determination that the jury must make.

■■ The old rule that a witness may not give an opinion of an ultimate fact question has been abrogated in Indiana. *Shelby v. State,* (1981) Ind., 428 N.E.2d 1241, 1243; *Woods v. State,* (1978) 267 Ind. 581, 582, 372 N.E.2d 178, 178. The trial court in its discretion may permit such opinion evidence in an appropriate case; accordingly, this Court will reverse such an exercise of discretion only upon a showing of abuse. *Id.* Witnesses have given opinions on whether a person is intoxicated, *Wofford v. State,* (1979) Ind., 394 N.E.2d 100, whether the defendant made true statements to the police, *Porter v. State,* (1979) Ind., 391 N.E.2d 801, whether the defendant appreciated the wrongfulness of his conduct, *Bobbitt v. State,* (1977) 266 Ind. 164, 361 N.E.2d 1193, and whether a child had been abused, *Ball v. State,* (1980) Ind.App., 406 N.E.2d 305.

■■ We do not find reversible error here. As the prosecution stated in response to defense counsel's objection, Officer Croft had investigated numerous drug cases and therefore he had enough experience to give an opinion on whether or not the drugs were held for sale or for personal use. The large amount of drugs found in the house, plus the sifters and other tools, indicated that the drugs would be prepared for sale. The jury would then weigh Officer Croft's opinion before ultimately deciding the ques-

tion. There was no abuse of discretion in allowing the testimony of Officer Croft.

### VI

Appellant was convicted of three counts of dealing in controlled substances. Count I was a Class A felony and Appellant was given the presumptive penalty of thirty years in prison. Count II was a Class B felony and Appellant was given the presumptive penalty for that offense, ten years in prison. Count III was a Class C felony and Appellant was given the presumptive penalty of five years in prison. The trial court ordered the three sentences to be served consecutively. Appellant argues on appeal that the forty-five year prison term is excessive and unreasonable.

Our applicable rule covering appellate review of sentences states that this Court will not "revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R.App.Rev.Sen. 2(1). This Court has also held that when the trial court increases or decreases the sentence imposed by law, or orders the sentences to be served consecutively, the record should disclose the factors considered by the trial court to constitute aggravating or mitigating circumstances. *Gardner v. State,* (1979) Ind., 388 N.E.2d 513, 517.

■■ The trial judge, however, ordered that the sentences be served consecutively while also stating that he found no aggravating or mitigating circumstances which would "out-weigh imposition of the normal sentence." The imposition of consecutive sentences conflicts with the mandate of *Gardner* and thereby constitutes error in sentencing. Therefore, we remand this cause to the trial court with instructions to impose concurrent, not consecutive sentences.

This cause remanded to the trial court with instructions to amend the sentencing; in all other respects, the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, and HUNTER, JJ., concur.

PRENTICE, J., concurs in result with separate opinion.

PRENTICE, Justice, concurring in result.

I am unable to join the majority opinion upon Issue V.

As characterized by the majority, Officer Croft related his opinion that Defendant possessed the contraband recovered for purposes of selling or delivering it. From his entire testimony, I conclude that he was testifying hypothetically. Croft was asked, " * * *, do you have an opinion as to whether or not these drugs were sold or were possessed solely for personal possession or whether they were possessed for delivery or sale?", whereupon Defendant's objection was argued and overruled. Croft then testified as follows:

"Q. In your opinion were these, was this amount of drugs possessed for personal use or for delivery to others?

"A. It was possessed for sale.

"Q. I also direct you to State's Exhibits # 4, which has previously been identified as drugs containing amobarbital and secobarbital, based upon your experience would this amount of drugs be possessed for personal use or for delivery to others?

"A. For sale, for delivery.

"Q. State's Exhibit # 5 and State's Exhibit # 15, based upon the amount, these have previously been described as valium tablets containing diazpam, based upon your experience and knowledge would this amount of drugs be held for personal use or for delivery or sale?

"A. Delivery and sale on those."

I do not comprehend the State's questions, as a whole, as inviting the Officer's opinion about whether Defendant entertained the requisite intent to sell, an ultimate fact in this case, although the first question could be so interpreted. Prior to his giving the testimony at issue, the State attempted to qualify Croft as an expert on the investigation of narcotics cases and, in so doing, disclosed the extent of his training and knowledge about controlled substances,

particularly cocaine. Having educated the jury as to his expertise, the State then sought to convey an "expert's" opinion upon whether, in general, one would possess a quantity of contraband, such as that recovered, for sale. See Thompson v. State, (1980) Ind.App., 400 N.E.2d 1151, 1153.

If the record revealed what the majority claims it reveals, it would show a clear abuse of discretion. In Simpson v. State, (1978) 269 Ind. 495, 502, 381 N.E.2d 1229, 1233, we stated:

"It appears from the record that the psychologist in question would have testified that appellant lacked the requisite intent because of his great fear of Ben Rodriguez. The question of a person's intent at the time of the commission of a crime, not related to an issue of insanity, is a question of fact for the jury and not a proper subject of expertise. The psychologist's testimony in this regard would have been nothing more than hearsay and was not necessary as an aid for the jury's determination of the issue of the presence or absence of criminal intent."

The State devotes a considerable portion of its argument to convincing us that Croft was qualified as an expert; however, it does not treat the issue of whether an expert's testimony was necessary in order to arrive at the opinion that Croft expressed. Even if qualified as an expert on narcotics investigations, Croft was no more capable than were the jurors themselves to infer Defendant's intent to sell from the single circumstance of possession of a large quantity of contraband.

"As a general rule, the opinion of experts is not received 'if all the facts can be ascertained and made intelligible to the jury, or if it is such as men in general are capable of comprehending and understanding.' (citation omitted)." Keifer v. State, (1927) 199 Ind. 10, 14, 154 N.E. 870, 871.

To allow Croft to relate the opinion that the majority claims he related, would invade the province of the jury. See Reburn v. State, (1981) Ind., 421 N.E.2d 604, 606 (de-

fense psychologist may not offer an opinion about whether the facts are consistent with an accidental shooting); *Ashbaugh v. State,* (1980) Ind., 400 N.E.2d 767, 773 (defense psychiatrists are not qualified to offer an opinion upon the issue of self defense); *LeFlore v. State,* (1972) 258 Ind. 458, 462, 281 N.E.2d 876, 878 (police officer, even if qualified as an expert, may not give an opinion about whether fingerprints are the best evidence that a person held an object); *Green v. State,* (1900) 154 Ind. 655, 57 N.E. 637, 640 (opinion about the quantity and quality of moonlight at the scene of a Murder is not a subject for expert testimony). *See also Matter of Perrello,* (1979) Ind., 386 N.E.2d 174, 179 (testimony by experts concerning what constitutes the practice of law held properly excluded as invading the province of the trier of fact).

The majority either overlooks or ignores the clear impact of the above cited cases by resorting to an oversimplified premise. These cases demonstrate that the old rule that a witness may not give an opinion upon an ultimate fact question has not been completely abrogated in Indiana. A witness still may not offer an opinion, expert or otherwise, upon an ultimate issue of fact, where the witness is in no better position than the jury to draw the inferences. That is to say that when the evidence, upon which the witness formed his opinion, is available to the jury, its position is equal of that of the witness and its opinion should be formed from the evidence free of the taint of the witness' opinion.

In a case where an ultimate issue of fact is the defendant's intent to achieve a specific unlawful result, such as the sale of a large quantity of narcotics in his possession, the circumstance of that possession does not change between the time the police officer recovers the narcotics and the time of the trial. The same cannot be said of the cases cited by the majority. The symptoms of intoxication usually disappear entirely before trial. *Wofford v. State,* (1979) Ind., 394 N.E.2d 100, 104. The bruises and injuries of an abused child may heal before trial. *Ball v. State,* (1980) Ind.App., 406 N.E.2d 305, 310. The jurors are not present during the interrogation of the Defendant; consequently, they cannot view his demeanor and other behavior reflecting upon the credibility of a confession for themselves. *Porter v. State,* (1979) Ind., 391 N.E.2d 801, 811. Likewise, they cannot view a defendant's conduct and behavior at the time of the alleged criminal act as it may bear upon his plea of insanity. *Washington v. State,* (1979) Ind., 390 N.E.2d 983, 988; *Bobbitt v. State,* (1977) 266 Ind. 164, 170–71, 361 N.E.2d 1193, 1197. In sharp contrast, the jurors could weigh the fixed circumstance, in this case the quantity of narcotics recovered, and, without the aid of the opinions from others, arrive at a conclusion of their own as to Defendant's intent to deliver or to sell.

The majority's opinion upon this issue adds a mischievous and potent weapon to the State's arsenal. The testimony of a police officer, qualified as an expert, will no doubt, be given great weight. Additionally, if an experienced narcotics investigator may opine, under oath, about a Defendant's intent to sell narcotics, should we not also allow a member of the vice squad to testify that, in his opinion, an accused knew that something he possessed was obscene, or a member of the homicide squad to testify that, in his opinion, an accused intended to commit Murder? Our jurisprudence has wisely made the determination of such issues the exclusive province of the trier of fact. *See Simpson v. State, supra.*

Nevertheless, under the circumstances of this case, I cannot find reversible error in the trial court's refusal to exclude Croft's testimony. The record contains additional substantial evidence of an intent to sell and of a thriving business. The quantity of contraband seized was quite large. The police found a gun, a clip of ammunition, a sieve, and a grinder in the black satchel, which contained some of the recovered contraband. During the search of Defendant's home the telephone rang numerous times. A police officer answered only three of the calls. During one call, the caller requested Defendant by name and inquired if Defendant had the "stuff". At the police station,

while being booked, Defendant made a very inculpatory admission:

"A. After Detective Leezer asked him with the kind of job he had it was hard to believe he was into dealing drugs, he said, 'I started to get out of the coke business about a month ago.' He said, 'I wish now that I had.'"

From this evidence I conclude that the admission of Croft's testimony was error, but harmless. Consequently, I vote to affirm the judgment.