CROWE *v.* STATE OF INDIANA.

[No. 868S122. Filed January 20, 1969.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General and *James H. Voyles,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is a criminal prosecution commenced by the filing of an affidavit charging the appellant with the crime of violating the 1935 Narcotic Act, as amended. A

trial without intervention of jury resulted in a finding of guilty.

The sole contention made is that the appellant was arrested by police officers without a warrant and without probable cause for arrest, and that as a result of the illegal arrest a search was made of the appellant and a package of marihuana was found in the inside pocket of appellant's coat. There was no evidence of possession other than that resulting from the arrest and search of the appellant.

The evidence is rather meager. It shows that Dora Ward, a police officer of the City of Indianapolis assigned to the narcotics branch, saw the appellant, Clarence Crowe, at approximately 9:00 p.m. at 2613 Broadway, Marion County, Indiana. The witness stated he had been conducting a surveillance of the above named address. He observed a white 1962 automobile driven by Michelle Garrett, with appellant Crowe as a passenger therein, parked across from the address. Crowe left the vehicle and entered the building. The witness said he had a belief that Clarence Andrew Crowe had committed an illegal act, and that it was based upon a conversation he had with Michelle Garrett at the time the appellant entered the building. The testimony is as follows:

"Q. And, was this belief, that you had, based on any conversation that you might've had with Michelle Garrett?

A. What belief, sir?

Q. That Clarence Andrew Crowe had committed an illegal act?

A. Part of it was based on that.

Q. The prosecutor asked you did you have a belief that he'd committed an illegal act.

A. I did, yes, sir.

Q. And, was this belief founded, in whole or in part, on the conversation with Michelle Garrett?

A. In part.

Q. And, did you ever have any conversations, prior to this time and unrelated to this case, with Michelle Garrett?

A. Yes, sir.

Q. And, she had been in the habit of frequently advising and informing yourself and other police officers with information?

A. Yes. I had used Michelle Garrett's information on previous cases.

Q. And, when was the first time that you had occasion to use information that Michelle Garrett had given to you for criminal proceedings against an individual?

A. I don't recall the exact date. I can give you the case. One case, in particular, Anthony Patterson, resulted in his arrest with the seizure of approximately thirty capsules of heroin.

Q. And when was this?

A. I don't recall the date, sir.

Q. And, do you recall the year?

A. Yes. It would be 1967.

Q. '67—that was after this . . .

A. Yes, sir.

Q. . . . case that occurred in 1966?

A. Yes, sir.

Q. Now, can you tell me on what occasions prior to this, prior to December 16th, 1966, you had occasion to have information given to you by Michelle Garrett lead to the apprehension and conviction of a criminal?

A. I know of no convictions."

In addition, the witness testified that he was given information by one Rick Desmond that there was a large quantity of marihuana at 2613 Broadway. The evidence reveals that this was an apartment building with approximately eight or ten units therein. There was no testimony that the witness was informed that the appellant would have marihuana on his person at any time.

The testimony further shows that the police officer got in the rear of the car, laying down on the floor, and in about five minutes the appellant returned to the automobile from the apartment building. At that time the officer then arrested Crowe and searched him and found the marihuana. The

officer testified he did not observe the appellant commit any misdemeanor in his presence and that the arresting officer had no warrant for appellant's arrest nor a search warrant. The only question is: Did the officer have probable cause to believe that the appellant had marihuana in his possession after he left the apartment building in question? Assuming there was reliable information that the drug was stored someplace among the eight to ten apartments therein, we have no testimony showing that he entered any particular apartment, nor do we have any evidence as to what apartment, if any, the marihuana was located in. If we assume there was probable cause for the arrest of the appellant in this case, it would follow that there would have to be probable cause for the arrest of any person leaving this same apartment building. With such consequences we cannot agree. In the appellant's case there was no testimony showing that appellant went to the apartment building to obtain narcotics, nor was there testimony that he was engaged in such traffic.

In order for probable cause to be sufficient for an arrest, the information furnished in the first place must be reliable [*Potter* v. *United States,* 362 F. 2d 493 (5th Cir. 1966)], but even here assuming that such meager information as the officer had that marihuana was located in an eight or ten unit apartment building, it does not follow that everyone coming out of the building would possess part of the cache of marihuana that was located therein.

The arrest being without probable cause, the search likewise based upon the arrest was unlawful, and the evidence obtained from the search is not admissible.

Art. I, Sec. 11, Constitution of Indiana; *Beck* v. *Ohio* (1964), 379 U. S. 89, 85 S. Ct. 223, 13 L.Ed. 2d 142; *Weeks* v. *United States* (1914), 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652.

The judgment of the trial court is reversed.

DeBruler, C. J., and Hunter, Jackson and Givan, JJ., concur.

NOTE.—Reported in 243 N. E. 2d 759.