**Stephen A. MERS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–384A75.**

Court of Appeals of Indiana, Second District.

Sept. 23, 1985.

Bruce E. McLane, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Stephen Mers appeals his conviction in a jury trial of theft, a class D felony under Ind.Code § 35–43–4–2(a) (1982). Mers raises four issues for our review, but because we are required to remand the case to the trial court, we discuss only two:[1]

1) whether the issuance of a search warrant for Mers's vehicle was supported by an adequate probable cause affidavit, and

2) whether the defendant was tried by a fair and impartial jury?

1. We cannot review the evidentiary issue or the sufficiency of the evidence issue until we can

*Facts*

Sometime between 8:30 p.m. on November 16, 1982 and 1:30 a.m. the next day, the Starland Arcade in Upland (Grant County), Indiana was forcibly entered. Quarters from the video machines, cigarettes from a vending machine, and a trash basket (to hold the cigarettes) were taken. The defendant-appellant, Stephen Mers, was charged with the theft of the various items.

On November 17, 1982, the Upland police obtained a warrant to search the trunk of Mers's car for the wastebasket and cigarettes. The warrant was based on the following affidavit:

"MICHAEL PARKER, being duly sworn upon his oath, deposes and says: That he believes and has good cause to believe that there are certain items, to-wit:

A cream or off-white colored plastic trash basket approx. two feet high and numerous packages of various brands of cigarettes located and concealed in or upon a certain *car trunk*, to-wit:

A 1974 blue Ford Torino auto with Indiana 1982 license plate 27E 7007 and that the above described items are unlawfully possessed and subject to seizure because Evidence of a Crime

The reasons and grounds for affiant's belief that there is probable cause for searching said *trunk of 1974 Ford Torino* are as follows: That affiant, Michael Parker observed the car in Upland, Grant County, Indiana, at approximately 11 p.m. on Nov. 16, 1982 while on patrol. Affiant saw the car drive into two service stations in Upland and then drive out and approximately one-half hour later affiant again saw the Ford, this time parked behind the Upland Tavern. On each occasion there were three subjects in the Ford Torino. Affiant went on another call and then at approximately 12:34 a.m. on Nov. 17, 1982 affiant saw the Ford on W. Urban Street, Upland, Grant County, Indiana, and saw two of the subjects get out of the car and walk

determine whether the trial court erred in admitting the fruits of the search of Mers's car.

behind the Union 76 Service Station, corner of E. Urban and N. Main Streets, Upland, and try to open the rear door. Affiant called for assistance on a possible burglary being committed and Grant County Sheriff's Deputies Charles Rudicel and Dave Magers arrived shortly, but the men were gone and affiant described their car and Deputy Magers said he had past [sic] that car on the way into Upland and the sheriff's deputies then went after the Ford Torino which they stopped at Indiana 22 and I–69, Grant County, Indiana, writing traffic citations for the driver, Steve Mers, on charges of improper headlights, false registration and operating a motor vehicle on a beginner's permit without a licensed drive [sic] present.

The Ford Torino was then impounded because none of the three occupants was a licensed driver and in an inventory of the passenger compartment, approximately $7.00 in loose quarters, U.S. coins, was found in a white tee-shirt and two $1.00 bills, U.S. Currency, were found on the backseat floorboard. Affiant radioed Upland Marshal Roger Brown and had him check businesses in Upland and Brown found the Starland Arcade, located in the 100 block of E. Washington Street, Upland, Grant County, Indiana, had been entered after the lock hasp on the front door had been cut and radioed the information to affiant who then returned to Upland.

That Marshall Brown checked the Starland Arcade and found trash on the floor and the doors to amusement machines and a cigarette machine all open and the coin boxes empty.

Affiant checked the area around the outside of the arcade and across the street, slightly to the south of the Arcade, affiant found a pair of metal cutters, and behind the Upland Tavern where affiant had seen the Ford Torino parked affiant and Deputy Sheriff Bill Norton found a blue die (one of pair of dice) made of foam material. That, later, when affiant examined the passenger compartment of the Ford Torino at the Grant County Jail, affiant found a second blue foam die which matched the one he had found behind the service station, each die having red polka dots on it.

That David W. Oaks, operator of the Starland Arcade, told affiant and Marshal Brown that a cream or off-white colored plastic trash basket approximately two feet in height was missing from the arcade and that the trash on the floor had been in the basket. Oaks said numerous packages of various brands of cigarettes had been taken from the cigarette vending machine in the arcade. Affiant believes the plastic trash basket and the packages of cigarettes are in the trunk compartment of the 1974 blue Ford Torino and therefore asks that a search warrant be issued to search the trunk compartment of the Ford Torino."

Record at 233.

The trunk was pried open and the officers found the stolen wastebasket and 350 packs of cigarettes.

### I. *Admissibility of Stolen Property Evidence*

The fourth amendment to the Constitution of the United States provides the following guarantees:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [2]

Under the fourth amendment, a judge must determine if probable cause has been established before a search warrant may be issued. *McClain v. State*, 274 Ind. 250, 410 N.E.2d 1297 (1980). While the quantity and nature of information neces-

---

**2.** The framers of the Indiana Constitution used almost identical language in article 1, section 11.

sary to determine probable cause are "inextricably related to each given set of facts," *Layman v. State*, 407 N.E.2d 340 (Ind.App. 1980), two basic questions are always pertinent to the determination of probable cause: "whether the particular items sought to be seized are sufficiently connected with criminal activity, and whether the items are to be found in a particular place." *Id. See also Flaherty v. State*, 443 N.E.2d 340 (Ind.App.1982).

Indiana's statutory authority regarding search and seizure is found in Ind.Code Ann. § 35–33–5–1 and 2 (West Supp.1984–85). Ind.Code § 35–33–5–2 provides in pertinent part as follows:

> "[N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing ... the place to be searched and the things to be searched for, ... and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed the offense, ...."

The question in this case is reduced to whether there was sufficient factual information on the face of the affidavit from which a neutral and detached magistrate could reasonably have concluded that probable cause existed for the issuance of a search warrant. *See Layman v. State*, 407 N.E.2d 259 (Ind.App.1980). ,

The search warrant for the trunk of Mers's car was issued upon a probable cause affidavit which essentially describes the sightings of Mers's car with three occupants engaging in suspicious activity behind a service station. The affidavit also describes the burglary of an unrelated business, the Starland Arcade, after an unknown closing time on an unknown date. Any connection between these two incidents, the sightings of Mers's vehicle and

the burglary of the Starland Arcade, rests inference upon inference.

Specifically, the affidavit indicates Mers's vehicle was seen in and out of two service stations, parked on West Urban Street near a third station where two of the car's occupants attempted to open the rear door, and parked behind the Upland Tavern. After Mers's vehicle was stopped, loose quarters and one blue foam die were found in the passenger area. Upon investigation, police found the front door lock hasp of the Starland Arcade had been cut and the arcade had been burglarized. Inside the arcade, the coin boxes were open and empty, and a plastic wastebasket and numerous packages of various brands of cigarettes were missing. A pair of metal cutters was found across the street and south of the arcade. Another blue die was found either behind the Upland tavern or behind a service station.[3]

The affidavit is silent as to when the arcade had last been secured or checked before the theft was discovered. The only items reported missing were not found in Mers's vehicle before the search warrant was executed and Mers's vehicle was never sighted at the arcade. The cache of quarters described in the affidavit is without inferential value on the issue of probable cause; money was not reported missing from the arcade. It cannot be reasonably inferred the quarters are connected to the arcade, not only because the affidavit is silent as to the taking of any quarters, but also because logic and common sense permits the equally reasonable inference the operator of the arcade would have emptied coin accepting machines at the end of a business day and left the boxes open to discourage their damage by forcible entry.[4]

The blue die found in Mers's car and the matching blue die, found either behind the Upland Tavern or behind the service station, only corroborates the earlier police sightings of the vehicle in both places. The

---

3. The probable cause affidavit is contradictory with regard to the location of the blue die.

4. A similarly logical and common sensical good business practice would be to leave cash register drawers empty and open for the same purposes.

affidavit fails to reveal a realtionship between the location of the tavern or service station and the location of the arcade and, accordingly, lacks inferential value on the issue of probable cause. Finally, the affidavit does not state that Mers's vehicle was ever observed across the street and south of the arcade where the metal cutters were found. Therefore, the location of the cutters also lacks any inferential value. In short, the affidavit fails to connect the sighting of Mers's vehicle to the location of the metal cutters or the burglarized arcade.

■ We must conclude that the warrant for the search of Mers's car was improvidently issued because only by speculation could a neutral magistrate have singled out the trunk of Mers's car as the place where the stolen cigarettes and wastebasket would be found. *See Crowe v. State*, 251 Ind. 562, 243 N.E.2d 759 (1969); *Flaherty v. State*, 443 N.E.2d 340 (Ind.App.1982).

Accordingly, the search of Mers's car was in violation of constitutional protections against search warrants issued without probable cause.[5] The only question remaining is whether the stolen wastebasket and cigarettes should have been excluded from evidence at Mers's trial.

5. The record is devoid of any evidence to justify the intrusion into the locked trunk as an inventory measure or any additional evidence to justify consideration of the property of a warrantless search.

6. The federal and state exclusionary rules developed as separate but parallel doctrines. The federal rule was first articulated in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and then developed in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). "In *Boyd*, exclusion was a by-product of the fifth amendment's ban on compulsory testimony; .... In *Weeks*, exclusion was a by-product of the fourth amendment's mandate that the government return wrongfully seized property...." Stewart, Potter, *The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search and Seizure Cases*, 83 Colum.L.Rev. 1365, 1375 (1983). The development of the rule was completed when in the *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) decision, the Court held that the exclusionary rule is constitutionally re-

Until the recent United States Supreme Court decision in *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the stolen cigarettes and trash basket, obtained as a result of an illegal search, would have been inadmissible evidence as a matter of federal and state law.[6] The general rule was that all evidence obtained by searches and seizures in violation of the constitutional protections was inadmissible in state or federal courts. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Enlow v. State*, 234 Ind. 156, 125 N.E.2d 250 (1955). However, in its opinion in *Leon*, the Court created a good-faith exception to the federal exclusionary rule. The Supreme Court held that, "evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded, as a matter of federal law, from the case-in-chief of federal and criminal prosecutions." 104 S.Ct. at 3423 (Blackman, J., concurring). The Court reasoned that the exclusionary rule was not required by the language of the fourth amendment, that other exceptions to the rule had been developed, and that the social costs outweighed the deter-

quired and applicable to state action through the fourteenth amendment.

Indiana's exclusionary rule, founded upon article 1, sections 11 and 14 of the Indiana Constitution, was first applied in *Callender v. State*, 193 Ind. 91, 138 N.E. 817 (1922). In *Callender*, the court held that the protections against being forced to testify against oneself require the courts to follow the following rule: "If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant, and its admission over his objection was prejudicial error." 138 N.E. at 818 (citations omitted).

When, in 1961, the *Mapp* decision extended fourth amendment restrictions to include state action, Indiana courts continued to refer to the protections in article 1, section 11, but the opinions used primarily fourth amendment analyses and federal authorities. *See e.g., Riddle v. State*, 257 Ind. 501, 275 N.E.2d 788 (1971); *Kinnaird v. State*, 251 Ind. 506, 242 N.E.2d 500 (1968). *Cf. State v. Dusch*, 259 Ind. 507, 289 N.E.2d 515 (1972) (parallel analyses).

rence [7] effected by the application of the exclusionary rule.

To date, the supreme appellate courts of two states have had the opportunity to reject or accept the good-faith exception created in *Leon*.[8] The Supreme Court of Virginia expressly embraced the *Leon* opinion, without discussion. *McCary v. Commonwealth*, 228 Va. 219, 321 S.E.2d 637 (1984). The Supreme Court of Arizona, in a comprehensive opinion, specifically distinguished the warrantless search protections guaranteed under its state constitution from those offered by the fourth amendment, but it then tentatively adopted the good-faith exception to the exclusionary rule: "[E]ven though on occasion we may not agree with the parameters of the exclusionary rule as defined by the United States Supreme Court, we propose so long as possible, to keep the Arizona exclusionary rule uniform with the federal." *State*

*v. Bolt*, 142 Ariz. 260, 689 P.2d 519, 528 (1984) (en banc).

■ Because the Indiana exclusionary rule has historical ties to the federal rule,[9] and because Article I, Section II of the Indiana Constitution contains substantially identical language as the fourth amendment, we fail to find any compelling reason for rejecting the *Leon* good faith exception in Indiana, at least until such time as experience convinces us that the exception is unworkable or subject to abuse.[10] Therefore, we, too, adopt such an exclusion.

Because the *Leon* exception had not been announced when the trial court in the instant case ruled on the motion to suppress the fruits of the search, the parties were not aware of the need to present the issue of the good faith of the officers and the magistrate in preparing, issuing, and executing the search warrant. Consequently,

7. The Court noted in a footnote that many "researchers have concluded that the impact of the exclusionary rule is insubstantial, but the small percentages with which they deal mask a large absolute number of felons who are released because the cases against them were based in part on illegal searches or seizures." *Leon*, 104 S.Ct. at 3413 n. 6.

8. A third state supreme court went out of its way to imply that protections in its state constitution might prohibit it from adopting the good faith exception:

> "As previously stated herein, application of the totality of circumstances test leads us to hold that there was a substantial basis for the finding of probable cause in the present case. Therefore, we need not consider or decide whether the guarantees against unreasonable searches and seizures in Article 1, Section 20 of the Constitution of North Carolina require the exclusion of evidence seized under a search warrant not supported by probable cause. *See e.g. State v. Small*, 293 N.C. 646, 239 S.E.2d 429 (1977) (Implying an exclusionary rule arising from Article 1, Section 20); *State v. Reams*, 277 N.C. 391, 178 S.E.2d 65 (1970) (same); *State v. Colson*, 274 N.C. 295, 163 S.E.2d 376 (1968) (same)."

*State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254, 261 (1984).

Two intermediate state appellate courts have published opinions in which they adopted the exception created in *Leon*. *State v. Horsey*, 676 S.W.2d 847 (Mo.Ct.App.1984) (transfer denied); *State v. Wood*, 457 So.2d 206 (La.Ct.App.1984) (noting that the exclusionary rule was imposed

upon Louisiana by a Supreme Court opinion in 1961 and that no good reason existed for not applying an exception created by the same source).

9. The Indiana constitutional protections against unreasonable search and seizure track those of the United States Constitution, and the creation of Indiana's exclusionary rule was founded upon the reasoning of the cases that established the federal rule. *Callender*, 193 Ind. 91, 138 N.E. 817 (1922) (relying on the reasoning of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) and *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)).

10. See Justice Blackmun's concurring opinion in *Leon* for elaboration on this reservation:

> "What must be stressed, however, is that any empirical judgment about the effect of the exclusionary rule in a particular class of cases necessarily is a provisional one. By their very nature, the assumptions on which we proceed today cannot be cast in stone. To the contrary, they now will be tested in the real world of state and federal law enforcement, and this Court will attend to the results. If it should emerge from experience that, contrary to our expectations, the good faith exception to the exclusionary rule results in a material change in police compliance with the Fourth Amendment, we shall have to reconsider what we have undertaken here. The logic of a decision that rests on untested predictions about police conduct demands no less."

104 S.Ct. at 3424.

it is necessary that the cause be remanded for a hearing on the issue of whether the issuing magistrate performed as a neutral and detached decision-maker and whether the officers acted in objectively reasonable reliance upon the warrant issued.

## II. *Impartiality of Jury*

■ Mers argues to this court that the trial court should have held a post-trial hearing to examine the impartiality of a juror who may have answered a voir dire question inaccurately. Mers, however, has waived appellate review of this issue.

Of necessity, a part of the factual basis for the asserted error, the juror's relationship to a jailer, would not appear in the trial record because that knowledge, according to the motion to correct error, was obtained after the trial. Therefore, Ind. Rules of Procedure, Criminal Rule 16 [11] and Trial Rule 59(H)(1) [12] imposed the duty upon Mers to support his claim by an affidavit asserting the relationship. He failed to present such an affidavit to the trial court prior to its ruling on the motion to correct error. That omission, coupled with his failure to supplement the record on appeal with a statement as allowed by Ind. Rules of Procedure, Appellate Rule 7.2(A)(3) [13] reciting the pertinent events occurring during the voir dire (it was not reported), forestall appellate review of the issue of possible juror bias. *See Hunt v.*

**11.** Criminal Rule 16 provides in pertinent part: "Trial Rule 59 (Motion to Correct Errors) will apply to criminal proceedings insofar as applicable and when not in conflict with any specific rule adopted by this court for the conduct of criminal procedure."

**12.** Trial Rule 59(H)(1) provides as follows: "When a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion."

**13.** Appellate Rule 7.2(A)(3)(c) provides in part: "*Statement of the Evidence or Proceedings when no Report was made or when the Transcript is Unavailable.* If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings

*State,* 455 N.E.2d 307 (Ind.1983); *Pettit v. State,* 272 Ind. 143, 396 N.E.2d 126 (1979).

Due to the necessity of a hearing under Issue I, we retain jurisdiction of this appeal but remand this cause to the trial court for the purpose of conducting that hearing. The trial court shall certify its ruling to this court within (10) days after its entry. Any party desiring to appeal that ruling shall do so by filing a supplemental record with the clerk of this court on or within thirty (30) days of the ruling. On or within thirty (30) days of the filing of the supplemental record the appealing party shall file a supplemental brief; the opposing party shall have an additional thirty (30) days to file an answer brief; the appealing party shall have an additional fifteen (15) days to file a reply brief.

SULLIVAN, J., concurs.

BUCHANAN, C.J., dissents, with separate opinion.

BUCHANAN, Chief Judge, dissenting.

### DISSENTING OPINION

My dissent is based upon reasonable inferences arising from the information contained in the probable cause affidavit which was placed before the magistrate for his consideration.[1] The affidavit recited that:

from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record."

**1.** Because I conclude that the probable cause affidavit was sufficient, I do not reach the question of the applicability of the "good faith" exception to the exclusionary rule for the fruit of an illegal search announced in *United States v. Leon* (1984), —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677.

"The reasons and grounds for affiant's belief that there is probable cause for searching said trunk of 1974 Ford Torino are as follows: That affiant, Michael Parker observed the car in Upland, Grant County, Indiana, at approximately 11 p.m. on Nov. 16, 1982 while on patrol. Affiant saw the car drive into two service stations in Upland and then drive out and approximately one-half hour later affiant again saw the Ford, this time parked behind the Upland Tavern. On each occasion there were three subjects in the Ford Torino. Affiant went on another call and then at approximately 12:34 a.m. on Nov. 17, 1982 affiant saw the Ford on W. Urban Street, Upland, Grant County, Indiana, and saw two of the subjects get out of the car and walk behind the Union 76 Service Station, corner of E. Urban and N. Main Streets, Upland, and try to open the rear door. Affiant called for assistance on a possible burglary being committed and Grant County Sheriff's Deputies Charles Rudicel and Dave Magers arrived shortly, but the men were gone and affiant described their car and Deputy Magers said he had past [sic] that car on the way into Upland and the Sheriff's deputies then went after the Ford Torino which they stopped at Indiana 22 and I-69, Grant County, Indiana, writing traffic citations for the driver, Steve Mers, on charges of improper headlights, false registration and operating a motor vehicle on a beginner's permit without a licensed drive [sic] present.

The Ford Torino was then impounded because none of the three occupants was a licensed driver and in an inventory of the passenger compartment, approximately $7.00 in loose quarters, U.S. coins, was [sic] found in a white tee-shirt and two $1.00 bills, U.S. Currency, were found on the backseat floorboard.

Affiant radioed Upland Marshal Roger Brown and had him check businesses in Upland and Brown found the Starland Arcade, located in the 100 block of E. Washington Street, Upland, Grant County, Indiana, had been entered after the lock hasp on the front door had been cut and radioed the information to affiant who then returned to Upland.

That Marshal Brown checked the Starland Arcade and found trash on the floor and the doors to amusement machines and a cigarette machine all open and the coin boxes empty.

Affiant checked the area around the outside of the arcade and across the street, slightly to the south of the Arcade, affiant found a pair of metal cutters, and behind the Upland Tavern where affiant had seen the Ford Torino parked affiant and Deputy Sheriff Bill Norton found a blue die (one of pair of dice) made of foam material. That, later, when affiant examined the passenger compartment of the Ford Torino at the Grant County Jail, affiant found a second blue foam die which matched the one he had found behind the service station, each die having red polka dots on it.

That David W. Oaks, operator of the Starland Arcade, told affiant and Marshal Brown that a cream or off-white colored plastic trash basket approximately two feet in height was missing from the arcade and that the trash on the floor had been in the basket. Oaks said numerous packages of various brands of cigarettes had been taken from the cigarette vending machine in the arcade. Affiant believes the plastic trash basket and the packages of cigarettes are in the trunk compartment of the 1974 blue Ford Torino and therefore asks that a search warrant be issued to search the trunk compartment of the Ford Torino."

*Record* at 232. In assessing this affidavit, we heed Justice Pivarnik's admonition that *"[a] magistrate need only find there is probable cause* to issue a search warrant which is *based upon probability of criminal activity* and not necessarily upon a *prima facie* showing that there is criminal conduct or that contraband will be found." *Everroad v. State* (1982), Ind., 442 N.E.2d 994, 1005 (emphasis supplied); *see also Layman v. State* (1980), Ind.App., 407 N.E.2d 259, 263, *trans. denied* ("Probable

cause need not be established by that quantum of evidence necessary for a conviction nor need it be established by evidence which would be admissible at trial.'').

The totality of the circumstances contained in the affidavit shows that defendant-appellant Steven A. Mers (Mers) and his cohorts were cruising the alleys and byways of Upland, Indiana during the late evening and early morning hours. Two of the car's occupants, after stops behind other businesses, were observed walking behind a service station and attempting to open the rear door. Mers and his companions were not under continuous observation by the police during their activities, but subsequent investigation revealed that the Starland Arcade had been broken into, and cigarettes were missing from a machine, coin boxes were empty, and a wastebasket had been removed from the premises. Behind some of the businesses where the suspicious vehicle was earlier observed, a blue die was found which matched another in the passenger compartment of Mers's car. Moreover, a pair of metal cutters was found where Mers's car was earlier observed, and the Starland Arcade had been entered after the hasp on the lock had been cut. The affidavit further reflected that an inventory search of the occupants of Mers's car and the passenger compartment revealed loose quarters wrapped in a tee-shirt, but no other contraband. Thus, the magistrate was presented with information which revealed highly suspicious activity in a small town, late at night, which was tied directly to the vehicle Mers was driving.

This is clearly sufficient for the magistrate to conclude *the probability* of criminal activity. Furthermore, *the probable location* of the contraband in the trunk of the automobile was a reasonable deduction based upon the connection of the vehicle with Mers's criminal activity and the fact the inventory search of the passenger compartment did not reveal the contraband which, because of its size and volume, was not easily hidden. The majority seizes on the fact that the affidavit neglects to mention whether the service station that Mers's cohorts attempted to enter was closed.

The lateness of the hour and surreptitious manner of approach lead to a reasonable inference that it was not open at the time.

The totality of the circumstances allowed the judge to infer that Mers and his cohorts were *likely* involved in the break-in of the arcade and that the contraband was *probably* secreted in the trunk of Mers's car. That is all that our case law requires for the issuance of the warrant. *Everroad, supra; Layman, supra.* To hold otherwise is to ignore the United States Supreme Court's warning that " 'courts should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " *Illinois v. Gates* (1983), 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (quoting *United States v. Ventresca* (1965), 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684).

As I read the affidavit, the probability of criminal activity is overwhelming. The decision of the learned trial judge finding probable cause for the issuance of the search warrant should be affirmed.