**Darius V. BOWLES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0605–CR–238.**

Court of Appeals of Indiana.

May 31, 2007.

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Darius Bowles appeals his convictions for Class A felony dealing in cocaine, Class C felony possession of cocaine, Class D felony possession of a controlled substance,

and Class A misdemeanor possession of marijuana. We affirm.

## Issue

The sole restated issue before us is whether the trial court properly admitted evidence recovered from Bowles' residence pursuant to a search warrant, which was issued on the basis of a warrantless search of Bowles' trash.

## Facts

In June 2002, a confidential informant ("CI") told Sergeant Garth Schwomeyer of the Marion County Sheriff's Department that he had purchased cocaine from Bowles at Bowles's residence. After receiving this information, police planned to attempt a controlled buy from Bowles, but it was cancelled. No controlled buy from Bowles ever took place. Additionally, Sergeant Schwomeyer conducted surveillance of Bowles's residence after receiving the CI's tip but did not make a note of observing any evidence consistent with drug dealing, such as excessive traffic. The CI had no further contact with Sergeant Schwomeyer after the fall of 2002.

On March 4, 2003, Sergeant Schwomeyer collected and searched the trash set out for delivery outside Bowles's residence. Inside the trash bags were mail and a receipt with Bowles's name on them, marijuana seeds and stems, and approximately twenty-five plastic baggies that contained cocaine residue. On the basis of the evidence collected from the trash pull, Sergeant Schwomeyer sought and obtained a search warrant for Bowles's residence. Inside, officers found quantities of cocaine, marijuana, alprazolam, over $3000 in cash, and two firearms.

The State charged Bowles with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine and a firearm, Class D felony possession of a controlled substance, and Class A misdemeanor possession of marijuana. Bowles moved to suppress the evidence seized from his residence on the basis that the trash pull that led to the warrant's issuance violated the Indiana Constitution. The trial court denied the motion to suppress. It certified its ruling for interlocutory appeal and this court accepted jurisdiction.

On January 14, 2005, this court affirmed the denial of Bowles's motion to suppress based on the standard of reasonableness for trash pulls under the Indiana Constitution that was delineated in *Moran v. State,* 644 N.E.2d 536 (Ind.1994). *Bowles v. State,* 820 N.E.2d 739 (Ind.Ct.App.2005) (*"Bowles I"*). Bowles filed a petition to transfer. On March 24, 2005, while the petition was still pending, our supreme court issued its decision in *Litchfield v. State,* 824 N.E.2d 356 (Ind.2005). There, for the first time, our supreme court held that, under the Indiana Constitution, a warrantless trash pull and search was reasonable only if police first had reasonable suspicion that the subject of the search was engaged in illegal activity. *See id.* at 364. On March 31, 2005, one week after deciding *Litchfield,* our supreme court voted unanimously to deny transfer in *Bowles I.*

On remand to the trial court, Bowles again sought to suppress the evidence seized from his residence, based on the authority of *Litchfield.* The trial court denied the renewed motion to suppress for three reasons: (1) the trash pull and search complied with *Litchfield;* (2) Sergeant Schwomeyer acted in good faith in conducting the trash pull; and (3) the doctrine of law of the case prevented the trial court from suppressing the challenged evidence after this court affirmed its previous denial of the motion to suppress. On March 8, 2006, following a bench trial, the trial court convicted Bowles of Class A

felony dealing in cocaine, Class C felony possession of cocaine, Class D felony possession of a controlled substance, and Class A misdemeanor possession of marijuana. Bowles now appeals.

## Analysis

The first issue we address in this appeal is whether our reconsideration of the legality of the trash pull and search ought to be barred by the law of the case doctrine, given our consideration and resolution of the issue against Bowles in *Bowles I.* "The doctrine of the law of the case is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." *Cutter v. State,* 725 N.E.2d 401, 405 (Ind. 2000). The purpose of the doctrine is to promote finality and judicial economy. *Id.* Unlike the rule of res judicata, however, the law of the case is not a uniform rule of law, but only a discretionary rule of practice. *State v. Lewis,* 543 N.E.2d 1116, 1118 (Ind.1989). The law of the case doctrine does not prevent us from revisiting a prior decision of ours in all circumstances, although as a rule we should be loathe to do so in the absence of extraordinary circumstances. *Id.*

That the trash pull complied with *Moran*—i.e. that the *manner* in which it was done was reasonable—undisputedly is the law of the case. We have no inclination to revisit that issue, having thoroughly addressed it and there being no new facts relevant to that issue. Nor does Bowles ask that we revisit that issue. Whether we can or should revisit the legality of the trash pull under the Litchfield reasonable suspicion standard is a more difficult question. *Litchfield* was decided before Bowles's petition to transfer in *Bowles I* was denied. In theory, our supreme court could have granted transfer in *Bowles I* either to address *Litchfield's* applicability,

or to remand to this court for reconsideration in light of *Litchfield.* That the court did not do so, however, is no reflection on whether it believed either the result or analysis in *Bowles I* was correct, with or without *Litchfield.* A denial of transfer has no legal meaning other than to terminate the litigation in that particular appeal; it should not be construed necessarily as a ruling on the merits of a decision by this court. *See* Ind. Appellate Rule 58(B); *Journal–Gazette Co. v. Bandido's, Inc.,* 712 N.E.2d 446, 481 n. 7 (Ind.1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385.

Given the timing of this case in relation to the new rule of law announced in *Litchfield,* and the fact that no appellate court has addressed *Litchfield's* applicability here, we choose to exercise our discretion not to adhere formalistically to the law of the case doctrine, and we will analyze this case under the *Litchfield* rule. Additionally, new rules of criminal procedure are supposed to apply to all cases not yet final when the new rule was announced. *Smylie v. State,* 823 N.E.2d 679, 687 (Ind.2005), *cert. denied.* Bowles's case was not final when *Litchfield* was decided, and still is not final.

Under *Moran,* the sole limitation our supreme court placed on trash pulls under Article 1, Section 11 of the Indiana Constitution was that police conduct themselves in the same manner as would be appropriate for those whose duty it is to pick up trash for collection—i.e., police may not trespass onto property to retrieve garbage containers or draw undue attention to themselves or cause a disturbance. *Moran,* 644 N.E.2d at 541. In *Litchfield,* our supreme court retained this reasonableness requirement regarding *how* a trash pull must be accomplished by stating, "trash must be retrieved in substantially the same manner as the trash collec-

tor would take it." *Litchfield*, 824 N.E.2d at 363. Going beyond *Moran*, however, our supreme court added a new restriction on *when* police may conduct trash pulls under the Indiana Constitution: "We believe a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement." *Id.* at 364.

Under *Litchfield*, then, Sergeant Schwomeyer was required to possess reasonable suspicion that Bowles was engaged in illegal activity before he could pull Bowles's trash and search for evidence. The State argues on appeal that the tip of the confidential informant in June 2002 that he had purchased cocaine from Bowles created such reasonable suspicion to search Bowles's trash in March 2003. We disagree.

■ A tip from a known CI can, in the proper case, provide reasonable suspicion of criminal activity to justify a *Terry* stop or seizure, but it does not automatically do so in every case. *See Edwards v. State*, 832 N.E.2d 1072, 1075–76 (Ind.Ct. App.2005) (citing *Johnson v. State*, 659 N.E.2d 116 (Ind.1996)). Regarding reasonable suspicion based on a CI's tip, the Supreme Court has explained:

> Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

The reliability of the tip, for purposes of reasonable suspicion, may be established if the CI has provided reliable information to the police in the past. *Id.* at 146, 92 S.Ct. at 1923. Also, a tip where the veracity of the tipster is unknown may still establish reasonable suspicion, under a "totality of the circumstances" test, if independent police investigation corroborates at least some aspects of the tip, such as that the informant has accurately predicted future behavior of the suspect. *Alabama v. White*, 496 U.S. 325, 330–32, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990).

■ Police investigation failed to uncover any meaningful corroboration of the CI's tip that Bowles was selling cocaine. No controlled buy from Bowles ever took place, and surveillance of Bowles's residence also failed to corroborate the tip. There is no evidence that the CI accurately predicted any future behavior by Bowles. Sergeant Schwomeyer testified that he had no information as to whether this particular CI had ever provided reliable information to the police in the past. Additionally, over eight months passed between the CI's tip and the pull of Bowles's trash, during which time police failed to corroborate any part of the tip. "Stale information only gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved." *Raymer v. State*, 482 N.E.2d 253, 255 (Ind. 1985).

Despite these shortcomings in the CI's tip, the State nevertheless argues on appeal that the CI's reliability was established by the fact that he admitted to committing a crime—i.e., that he purchased cocaine from Bowles. However, our supreme court recently has limited the ability to rely on a so-called "declaration against penal interest" to support the veracity of a tipster's information. Review-

ing cases that had found a tipster to be reliable because he or she had implicated him or herself in the commission of a crime when providing information to the police, our supreme court stated, "The underlying thread binding these cases together is that an informant, after arrest or confrontation by police, admitted committing criminal offenses under circumstances in which the crimes otherwise would likely have gone undetected." *State v. Spillers*, 847 N.E.2d 949, 956 (Ind.2006). By contrast, in the case before the court, the CI had been caught "red-handed" with drugs in his possession before naming his source to police, prompting the court to conclude, "his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id.* In another recent case, our supreme court held that the prospect of prosecution for making a false police report does not necessarily make a tip by a known informant sufficient to establish reasonable suspicion. *Kellems v. State*, 842 N.E.2d 352, 355–56 (Ind.2006). Furthermore, the court stated that a tip from a "concerned citizen" generally may be seen as having higher reliability than a tip from a "professional informant." *Id.* at 356.[1]

As a matter of common knowledge, a CI often has already been implicated in some drug-related or other crime, but he or she is spared harsh consequences by police and prosecutors on the condition that he or she cooperates in investigating a "higher-up" drug dealer. In this context, the fact that the CI admitted to police that he purchased cocaine from Bowles is not a very meaningful admission of criminal liability. Given the totality of the circumstances—the lack of any previous history

of information from the CI, the complete lack of corroboration of the tip, and the sheer age of the tip at the time of the trash pull—we cannot say that any dubious weight given to the CI's alleged "declaration against penal interest" was sufficient to provide the reasonable suspicion necessary to justify the search of Bowles's trash under *Litchfield*.

▮ We now consider whether the evidence seized from Bowles's residence must be suppressed because the trash pull did not comply with *Litchfield*. What is being directly challenged here is the evidence recovered under the search warrant, not the evidence recovered from the trash pull. The relevance of the trash pull is whether it was appropriate for Sergeant Schwomeyer and the issuing magistrate to rely on it as providing probable cause for the search warrant.

▮ There are two competing considerations here. First is the principle of retroactivity. As noted, new rules of criminal procedure generally apply to cases that are not yet final or still pending on direct appeal when the new rule is announced, with no exception for rules that represent a "clear break" from prior precedent. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). This rule was developed in the context of the United States Constitution. Our supreme court has not explicitly stated whether it believes the *Griffith* retroactivity rule should apply to new rules of criminal procedure developed under the Indiana Constitution. We will assume that it does.

The flip side of the *Griffith* retroactivity rule is the good faith exception to the

---

1. Our supreme court granted rehearing in *Kellems* to address an issue it did not address in the first opinion. *Kellems v. State*, 849 N.E.2d 1110 (Ind.2006). On rehearing, the court did not address or disapprove of its first opinion regarding the search and seizure issue.

exclusionary rule. In 1922, our supreme court first adopted the exclusionary rule to suppress evidence recovered by law enforcement in violation of the Indiana Constitution. The court held, "If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant, and its admission over his objection was prejudicial error." *Callender v. State*, 193 Ind. 91, 96, 138 N.E. 817, 818 (1922).

The *Callender* court did not explain why it was adopting the exclusionary rule, but did cite a number of cases in support of it, including *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In that case, the Supreme Court explained why the exclusionary rule was the proper remedy for violations of the Fourth Amendment by law enforcement: "To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action." *Weeks*, 232 U.S. at 394, 34 S.Ct. at 345. In 1961, the Supreme Court held that the states were required to comply with not only the search and seizure protections of the Fourth Amendment, but also to utilize the exclusionary rule to remedy search and seizure violations. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). In so holding, the Court stated, "the purpose of the exclusionary rule 'is to deter— to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.'" *Id.* at 656, 81 S.Ct. at 1692 (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960)). Thus, as far back as *Weeks* and continuing through *Mapp*, it was established that the exclusionary rule is

meant to deter law enforcement officials from negligently or intentionally disregarding the requirements of the Constitution.

In 1984, the Supreme Court modified the exclusionary rule so that it does not automatically apply every time a search and seizure technically violates the Fourth Amendment. The Court clarified that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). Additionally, whether the exclusionary sanction should be imposed in a particular case is separate from the question whether the constitutional rights of the party seeking to invoke the rule were violated by police conduct. *Id.* The Court further explained:

> Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well "generat[e] disrespect for the law and administration of justice."

*Id.* at 907–08, 104 S.Ct. at 3412 (quoting *Stone v. Powell*, 428 U.S. 465, 491, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976)).

The Court ultimately held "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418. Specifically, be-

cause the purpose of the exclusionary rule is to deter unlawful police conduct, " 'evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional.... ' " *Id.* at 919, 104 S.Ct. at 3419 (quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)). "We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922, 104 S.Ct. at 3420. Suppression remains appropriate if: (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his neutral judicial role; (3) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. at 3421.

The year after *Leon* was decided, this court held:

> Because the Indiana exclusionary rule has historical ties to the federal rule, and because Article I, Section 11 of the Indiana Constitution contains substantially identical language as the fourth amendment, we fail to find any compelling reason for rejecting the *Leon* good faith exception in Indiana, at least until such time as experience convinces us that the exception is unworkable or subject to abuse. Therefore, we, too, adopt such an exclusion.

*Mers v. State,* 482 N.E.2d 778, 783 (Ind.Ct. App.1985). Our supreme court later cited *Mers* with approval in a case in which the defendant claimed that there was no good faith exception to the exclusionary rule under the Indiana Constitution. *Hopkins v. State,* 582 N.E.2d 345, 351 (Ind.1991). We conclude that the settled case law at this point is that there is a good faith exception to the exclusionary rule under the Indiana Constitution, parallel to *Leon.*

There also is a "good faith" statute in this state, Indiana Code Section 35–37–4–5, which provides:

> (a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.
>
> (b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:
>
> (1) it is obtained pursuant to:
>
> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
>
> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and
>
> (2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5–2–1–9.

(c) This section does not affect the right of a person to bring a civil action against a law enforcement officer or a governmental entity to recover damages for the violation of his rights by an unlawful search and seizure.

This statute was first enacted in 1983, before *Leon* and *Mers* were decided. It is debatable whether, at the time of its enactment, this statute unconstitutionally conflicted with the decisions in *Callender* and *Mapp*, requiring without exception application of the exclusionary rule for violations of the Indiana or United States Constitutions. Now, however, the statute can be seen as a partial codification of case law, albeit a codification that anticipated the case law. We conclude, however, that it is unnecessary to resolve this case with reference to the "good faith" statute; "good faith" case law provides sufficient guidance.

In *Spillers*, our supreme court reaffirmed its commitment to the good faith exception to the exclusionary rule. The court there held that a tipster's statement to police that he bought cocaine from the defendant was not a "statement against penal interest" and, therefore, there was a lack of probable cause to support the issuance of a warrant on the basis of that statement. *Spillers*, 847 N.E.2d at 956–57. Regardless, the court applied the good faith exception to the exclusionary rule and held that the evidence recovered under the warrant would not be suppressed. *Id.* at 957–58. The court noted that its conclusion regarding the lack of indicia of reliability of the informant "was reached only after examining more carefully existing case law on the subject" and stated that police officers are not required "to engage in extensive legal research and analysis before obtaining search warrants." *Id.* at 958. Thus, the court concluded that the officers had relied on the search warrant in objective good faith and reversed the suppression of the evidence recovered under it. *Id.*

█ It is true that any mention of the good faith exception to the exclusionary rule is missing in *Litchfield*. We must assume that the State in *Litchfield* did not raise the issue of whether the officer's search of the Litchfields's trash and subsequent obtaining of a search warrant was in good faith; otherwise we believe our supreme court would have addressed such an argument in the opinion. Our adversarial system depends upon parties advancing arguments in litigation; although courts are free to address an issue sua sponte, with certain exceptions they generally do not have to do so if none of the parties has raised the issue. *See Saylor v. State*, 765 N.E.2d 535, 560 (Ind.2002). As for this court, we have come to widely divergent conclusions on whether the good faith exception to the exclusionary rule should apply where police searched garbage in reliance on *Moran* and then obtained a search warrant based on the results of such a search, with *Litchfield* being decided after the garbage search but before the defendant's case was final. *See, e.g., State v. Harmon*, 846 N.E.2d 1056, 1059 (Ind.Ct. App.2006), *trans. denied*, (holding that good faith exception applied); *Turner v. State*, 843 N.E.2d 937, 943 n. 2 (Ind.Ct. App.2006) (holding that good faith exception did not apply).

We reaffirm the holding of cases such as *Harmon*, namely that the good faith exception to the exclusionary rule ought to apply in scenarios such as the one in this case. As *Leon* made clear, a defendant does not have a constitutional right to enjoy the benefits of the exclusionary rule. The rule is a judicial remedy designed to enforce the right against unreasonable search and seizure by deterring police officers from disregarding that right. There

would be a high societal cost to suppressing the evidence in this case with no corresponding benefit, because there was no police misconduct that needed to be deterred. There is no evidence that Sergeant Schwomeyer acted with intentional, reckless, or even negligent disregard of Bowles's rights under either the Indiana or United States Constitutions when he searched Bowles's garbage, then obtained and used a search warrant based on what he found. To allow suppression in this case would amount to a windfall to Bowles and punishing Sergeant Schwomeyer for acting in full accordance with the law as it existed at the time of the garbage search and subsequent search under the warrant. The central purpose of the exclusionary rule is to deter police misconduct; where there is nothing to deter and no wrongdoing in the search under the standards that existed at the time of the search, it makes little sense to apply the exclusionary rule.

We also observe that *Litchfield* was not just a clarification of existing law; it placed a substantial limitation on law enforcement's ability to search trash that did not exist under *Moran*. *Litchfield* effectively overruled *Moran*. This case presents an even more compelling case for applying the good faith exception to the exclusionary rule than *Spillers*, which merely clarified a gray area in the law but did not effectively overrule existing precedent.

### Conclusion

We conclude that police lacked reasonable suspicion to search Bowles' trash as is required under *Litchfield* and, therefore, issuance of a search warrant based on what was found in the trash was improper. However, the good faith exception to the exclusionary rule fully applies in this case because police clearly relied on the warrant in objective good faith under the legal standards in existence at the time. The trial court did not err in admitting the evidence recovered under the search warrant. We affirm.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.